[L. A. No. 1599. In Bank.—August 31, 1904.]

## H. J. VATCHER, Petitioner, v. CURTIS D. WILBUR, Judge of Superior Court of Los Angeles County, Respondent.

NEW TRIAL—SETTLEMENT OF STATEMENT—INSUFFICIENCY OF EVIDENCE —SUBSTANTIAL CONFLICT—DUTY OF PARTIES—DUTY OF JUDGE— MANDAMUS.—It is the duty of the party moving for a new trial to prepare a proper statement or bill of exceptions, so as to sustain his contention as to the insufficiency of the evidence to sustain the findings; but he is not required to embody therein all the reporter's notes. If the proposed statement omits evidence showing a substantial conflict, it is the duty of the other party to propose amendments to the statement, and not to throw the labor thereof upon the judge. If no amendments are proposed, and the proposed statement omits evidence it should contain, it is the duty of the judge to insert such evidence in general terms, and if he refuses to settle the statement he may be compelled by *mandamus* to do so.

ID.—TRANSCRIPTION OF REPORTER'S NOTES AS A CONDITION OF SETTLEMENT—UNREASONABLE ORDER.—Where the whole amount involved in the case is only five or six hundred dollars, and it would cost two hundred and fifty dollars to have the reporter's notes of the evidence transcribed, an order that the moving party shall procure a transcript of such notes in longhand, as a condition of the settlement of the proposed statement, to which no amendments were proposed, is unreasonable, and the failure to comply therewith cannot justify a refusal of the court to settle the statement.

PETITION for Writ of Mandate to compel the Judge of the Superior Court of Los Angeles County to settle a statement on motion for a new trial. Curtis D. Wilbur, Judge.

The facts are stated in the opinion of the court

Hester & Ladd, for Petitioner.

McNutt & Hannon, for Respondent.

VAN DYKE, J.—This is an application for *mandamus* to compel the respondent, a judge of the superior court of Los Angeles County, to settle a statement on motion for a new trial. Petitioner in his petition states that on the seventh day of April, 1903, one Lizzie Clapp filed a petition in said superior court of Los Angeles County for the probate of the alleged last will of Albert Clapp, deceased, dated November 17, 1899, and asking that letters testamentary upon said estate be granted to her; and that afterwards, on the nineteenth day of November, 1903, this petitioner filed written objections to said petition of Lizzie Clapp, contesting the probate of said alleged will, denying that the same was the last will of said deceased, and alleging that the same had been revoked by the deceased in his lifetime,—to wit, March 16, 1903,—by the execution of a later and last will by said deceased, and also by deed conveying to said contestant Vatcher all his real property in California; that afterwards, on the ninth day of December, 1903, Lizzie Clapp filed a reply and objections to the contest of the petitioner herein, denying the allegations of said petition, and alleging that at the time said deceased executed the later will and the said deed he was of unsound mind, and the execution of said later will and deed was procured by undue influence; that the said proceeding was tried before the superior court of said Los Angeles County, respondent herein presiding as judge thereof, commencing on the ninth day of December, 1903, and continuing on the 10th, 17th, 22d, and 23d of said month, on which last day the proceeding was submitted to the court for decision; that thereafter, on February 23, 1904, findings in said proceeding were duly filed to the effect that said Albert Clapp was of unsound mind when he executed the last-mentioned will and said deed, and that the first-mentioned will was the last will of said deceased, and should be admitted to probate as such, and judgment was entered thereon accordingly; that no notice of said decision or findings was at any time served on the petitioner, Vatcher, or his attorney in said proceeding, but that afterwards on the nineteenth day of March, 1904, and within ten days after said Vatcher had learned that said findings had been filed, he served upon the said Lizzie Clapp and her attorneys of record, and filed in the office of said superior court, notice of intention to

move for a new trial in said proceeding upon the grounds, amongst others, that the evidence was insufficient to justify the said decision, and that it was contrary to law; that afterwards said Vatcher caused to be prepared a statement of said case on motion for a new trial, specifying the particulars therein in which the evidence was alleged to be insufficient to justify the said decision, and alleged error of law, and setting forth substantially all the evidence given upon the said trial relating to said specified particulars, and on the twenty-fifth day of March, 1904, caused a copy of said statement to be delivered to and the same was received without objections by the said attorneys of the said Lizzie Clapp, said statement covering over twenty pages of typewritten matter; that on the thirty-first day of March, 1904, on notice to said Vatcher, the said attorneys of said Lizzie Clapp moved the court to strike out the said statement on motion for a new trial, served as aforesaid, on the alleged ground that the same did not contain a fair and correct statement of all the testimony given on the trial, but said Lizzie Clapp or her attorneys did not then, nor have they at any time, served upon said Vatcher or his attorneys any proposed amendments to said statement on motion for a new trial. Said motion to strike out the statement, after argument, was denied by the court, whereupon the attorneys for said Lizzie Clapp moved the court to require said Vatcher to procure a complete longhand transcript of the stenographic report of the testimony given on said trial, and to prepare a statement of the case from such transcript, which motion the court took under advisement, and thereafter, in the absence of said Vatcher and his attorneys, on April 2, 1904, made an order requiring said Vatcher to procure at his own expense a complete transcript of said stenographic report of said testimony, and to prepare therefrom within thirty days a statement of the case on motion for a new trial; that the legal charges for said transcript would not be less than from two hundred and fifty dollars to two hundred and seventy-five dollars, and that the said reporters refused to furnish said transcript for less than their legal charges, while the total assets of said estate cannot, in any event, exceed five or six hundred dollars; that said Lizzie Clapp, having failed to serve upon said Vatcher or his attorneys any proposed amendments

to said statement, and more than ten days having elapsed
since the service of the proposed statement upon her and her
attorneys, said Vatcher, on April 11, 1904, delivered to the
clerk of said court said proposed statement of the case, and
notified the said judge that he had so delivered the same, and
requested the said judge to proceed to the settlement thereof;
that said Vatcher thereafter moved the court to revoke and
set aside the order requiring him to procure the transcript
of said testimony, and that the court settle said proposed
statement of the case, but said court on April 22, 1904, denied
said Vatcher's motion to vacate and set aside the former order
requiring the transcript of said testimony, and refused to
settle the said proposed statement of the case.

Upon this petition being filed, an alternative writ of *man-
damus* was issued by this court, and the respondent has filed
quite a voluminous answer to said petition.   The facts, how-
ever, stated in said petition are not denied, except that it is
denied that the proposed statement of the case on motion for
a new trial substantially sets forth all the evidence given
upon said trial relating to said particulars wherein the evi-
dence was insufficient to justify the findings, and proceeds
at some length to detail wherein the said proposed statement
failed to set forth the evidence bearing upon the question
of said finding.   In fact, respondent's answer herein is much
more voluminous than would have been a properly prepared
and settled statement on motion for a new trial in the matter
of said contest.   If it had been necessary, as appears to be
contended by the respondent and by the proponent of the will,
who appears for him, to set forth in exact detail all the evi-
dence given by the respective witnesses upon the question of
the sanity of the deceased at the time of the later will, the
refusal to settle the bill proposed would perhaps have been
justified as imposing too much labor on the judge.   We think,
however, that the amount of labor necessary to have been done
to present the substance of the evidence tending to show the
insanity of the deceased at the time in question is greatly
overestimated.   It is not necessary in preparing a statement
or bill of exceptions for use in this court to give the evidence
in full, where the question to be presented is solely as to
the sufficiency of conflicting evidence to sustain a particular
finding.   All that is required is, that a sufficient amount of

the evidence be inserted bearing upon each side of the question to show a substantial conflict, for in such case this court does not interfere with the decision of the court below. It is quite true, as claimed by the respondent and attorney for said Lizzie Clapp, that the duty devolved upon the petitioner herein to prepare a proper statement or bill of exceptions so as to sustain his contention of the insufficiency of evidence to justify the decision of the trial court upon the point in question, but this does not mean that the statement or bill of exceptions should embody all the reporter's notes. It is also equally true that if the proposed statement had failed in this respect, it was the duty of the attorney of the petitioner Lizzie Clapp to propose amendments to said statement, and not, by failing to do so, to throw the labor of proposed amendments upon the judge who tried the cause. In fact, the law is plainly against any such practice. The code declares that in preparing the bill of exceptions the objection must be stated "with so much of the evidence or other matter as is necessary to explain it, and no more." (Code Civ. Proc., sec. 648.) And it is made the duty of the judge, "in settling the bill, to strike out of it all redundant and useless matter, so that the exceptions may be presented as briefly as possible." (Code Civ. Proc., sec. 650.) On motion for a new trial "the same proceedings for the settlement of the statement shall be taken by the parties, and clerk, and judge, as are required for the settlement of bills of exception by section 650," and it is made the duty of the judge "in settling the statement to strike out of it all redundant matter." (Code Civ. Proc., sec. 659.) The constant neglect or failure to observe these plain provisions of the code results in our records being many times larger than there is any necessity for, and very greatly increases the cost to litigants as well as the labor of this court, without any corresponding benefit.

The respondent judge of the court below, in making his order directing the contestant to procure a transcript of the reporter's notes, stated within the space of a page of typewriting sufficient facts, in connection with those given in the statement, to support the finding upon the question of the insanity of the deceased. He could have added an amendment to the proposed statement which would have suf-

ficiently preserved the evidence in the case for the benefit of the proponent of the will with as little labor as was required to make the order in question. For instance, the court could have added to the statement the following: ''Other evidence was given on behalf of the proponent of the will to the effect that the testator, within two years before his death, frequently complained of an affection in his head and had at times fits of fainting-spells, during which he was unconscious; that shortly before his death, and without cause, he had changed his feelings towards the witness John A. Wood from that of friendship to one of hatred; that he was addicted to excessive drunkenness; that his feelings towards his wife were subject to sudden fluctuations from affection to hatred; that he had at times a desire to injure his wife; that he had made threats to commit suicide both before and after March 16, 1903, the date of the later will and deed in question; and that he did, in fact, commit suicide on April 1, 1903, fifteen days after the execution of said later will and deed.''

As proposed, the statement contains the evidence of five witnesses who testified that they were acquainted with the testator, and that, in their opinion, during the last two years of his life he was of unsound mind. It omits, however, to show that these witnesses were intimate acquaintances, and for that reason qualified to give an opinion as to his mental condition. But this omission could have been remedied by a few lines giving so much of the evidence as to each of these witnesses, naming them, as would be sufficient to show that they were intimate acquaintances of the testator, or by a general statement that the evidence showed them to be intimate acquaintances, and, as such, qualified to give an opinion as to his sanity. If these amendments had been made to the statement, and it had been settled as thus amended, it would have presented the substance of all the evidence bearing upon the question of sanity, and, in view of the fact that the petitioner did not himself present a more detailed statement of the testimony, although he appears to have been acting in good faith in the premises, he could not justly complain of the action of the court in inserting the amendments in general terms, as suggested, before settling the statement. At any rate, it was entirely unreasonable

to require the contestant to incur the expense of two hundred and fifty dollars for a transcript of the reporter's notes as a condition for settling the statement, particularly in a small estate like this, conceded not to amount to more than five or six hundred dollars. The respondent as judge of said court was not required to sign the proposed statement as it was presented. It was his duty merely to settle it, and this implied that he should amend it, or cause it to be amended, so as to make a fair statement, where it can be done with no more labor than was here required.

We think, therefore, under the circumstances of this case, it was not a proper exercise of the discretion vested in the respondent judge to require a transcription of the full reporter's notes as a condition for settling said statement, and, for that reason, a peremptory writ should issue requiring him to settle the same, and it is so ordered.

Shaw, J., Angellotti, J., Lorigan, J., Henshaw, J., and Beatty, C. J., concurred.