[Civ. No. 21740. Second Dist., Div. One. May 29, 1956.]

MORRIS EISENBERG et al., Petitioners, v. THE SUPERIOR COURT OF LOS ANGELES COUNTY et al., Respondents; MICHAEL OMANSKY, Real Party in Interest.

Stanley Sapiro for Petitioners.

No appearance for Respondents.

Hahn, Ross & Saunders and Saul Ross for Real Party in Interest.

WHITE, P. J.—In this original proceeding petitioners seek a writ of mandate to compel the respondent judge of the Superior Court of Los Angeles County to settle a statement on appeal under rule 7, Judicial Council Rules on Appeal.

The petitioners were plaintiffs in an action brought against one Omansky to recover damages for alleged fraudulent misrepresentations made by Omansky in the sale of an apartment house. Findings were made and judgment entered in favor of defendants.

Following rendition of judgment and denial of their motion for a new trial, petitioners herein duly and regularly filed notice of appeal and of their election to proceed under rule 7, Rules on Appeal. Thereafter, petitioners duly served their proposed statement on appeal, and respondent Omansky served and filed proposed amendments in which he suggested 43 changes in petitioners' proposed statement, these being about equally divided between portions he desired stricken and additional matters he wanted inserted.

At the hearings held for the purpose of settling the statement and by letters addressed to counsel for respondent Omansky and the court, petitioners agreed to 18 of the changes requested by Omansky. As to 17 of the matters which respondent Omansky desired stricken, petitioners, offered to submit partial reporter's transcripts, made during the trial, from which Omansky could verify the narrative statements set forth in the proposed settled statement. As to one matter petitioners agreed to clarify the language used in the proposed settled statement. As to five matters, petitioners requested the trial judge to refer to his notes or have the reporter read his notes to the judge so that the latter might decide upon the validity of respondent Omansky's objections and settle the statement.

Respondent Omansky also objected to the form of the settled statement, asserting that it was not a narrative statement of the testimony of witnesses, but a statement of facts. This objection lacks substance though it might be conceded the narrative statement would have been in better form if the testimony of the witnesses was set forth, as far as possible, in the first person.

The court refused to settle the statement unless and until he had been furnished with a complete reporter's transcript of the oral proceedings.

The trial of this action consumed eight court days and 22

witnesses were examined. It is undenied that the cost for a complete reporter's transcript would approximate $1,300.

Pursuant to the provisions of rule 7, Rules on Appeal, petitioners, in their proposed settled statement, set forth five issues raised by them as grounds for appeal, thereby confining them to a consideration of those points only (rule 7, Rules on Appeal). They are: (a) That the court failed to make findings on two matters set forth in plaintiff's complaint; (b) that the court made certain findings of fact in the form of negatives pregnant; (c) that certain findings of fact were contrary to uncontradicted testimony; (d) that the decision was against the law insofar as representations set forth in the termite report were concerned; (e) that the court committed prejudicial error in refusing to allow plaintiffs to cross-examine defendant and respondent Michael Omansky as to differences between his testimony under Code of Civil Procedure, section 2055, and his testimony on direct examination.

A partial hearing on settlement of the proffered statement on appeal was held on February 6, 1956, at which time respondent judge requested counsel to endeavor to reach an agreement upon as much of the settled statement as was possible, and continued the hearing until February 23, 1956. In the interim counsel for petitioners mailed a letter to respondent Omansky and respondent judge wherein petitioners agreed to stipulate to the inclusion in the settled statement of 16 of the items requested in the proposed amendments of respondent Omansky and agreed to the additions of the "vital portions" of two other items requested to be added by respondent Omansky. It is alleged in the petition that, ". . . Petitioner did in said letter set forth the exact page and line numbers in Partial Transcripts then in possession of said respondent Michael Omansky wherein eighteen of the matters sought to be stricken by said Michael Omansky were set out. . . . That attorney for said Michael Omansky did state that he objected to petitioners appealing on a Settled Statement in this matter; and he did object to the form of some of the matter set forth in petitioners' Proposed Statement. That petitioners' attorney did then agree to make any changes in form suggested by respondents, but no such suggestions were ever received." In his answer to the foregoing, respondent Omansky asserts that said proposals were several times discussed with petitioners' counsel and that, "During the course of these conversations, counsel for re-

spondent very clearly gave his response orally to said letter and made clear the many and large areas of differences between them with respect to the proposed settled statement,'' but we are not advised by respondent Omansky of the nature or character of these ''large areas of differences'' claimed to exist.

On February 23, 1956, the hearing was by stipulation continued to March 1st, at 9 a. m., but on the latter date counsel for petitioners was five minutes late and the case was called in his absence. The minute order relating to this hearing is as follows:

''3-1-56. Settlement of Statement on Appeal is called for hearing. Saul Ross appearing for defendant and, later, Stanley Sapiro appearing for plaintiffs. Upon the statement by Mr. Ross that no agreement has been reached between counsel as to the settlement of the Statement on Appeal the Court rules that it will not settle the Statement unless a complete transcript of the testimony is made available to the court.''

Following this hearing, petitioners' counsel addressed a letter to respondent judge with copy thereof to the attorneys for respondent Omansky, wherein reference was made to the foregoing minute order, entered in the absence of petitioners' counsel, claiming that the latter was unavoidably delayed but had telephoned the court clerk of his predicament that he would be ''a little late.'' The letter further stated, ''. . . it has occurred to me that there are certain vital facts that have not been made available to you.

''On February 14, 1956 (Mr. Ross having previously requested such a letter), I wrote counsel for defendant and discussed each and every objection made by him to my proposed statement. I have enclosed a carbon copy of that letter. (The pen written changes regarding item 35 were made while in Court on the previous date set for settling the statement, at which date you were unable to be present). I have received no answer to that letter, but I have no doubt of Mr. Ross' cooperation therein.

''You will note that I agreed to add 17 items requested by Mr. Ross. Furthermore, I pointed out the exact page and line on partial transcripts now at our disposal, where 18 items sought to be stricken by Mr. Ross were set out in the testimony. This letter of February 14th further indicated my willingness to make some type of adjustment regarding three other items.

"This left exactly *five* (5) items wherein there can be any controversy whatsoever that might require search by the Court into his own notes or recollection.

"In that the Court took extensive notes and paid close attention to all the testimony given in the above cause, I do not feel that there should be any difficulty whatsoever regarding those *five* items." (Emphasis included.)

. . . . . . . . . . . . .

"I do not feel that appellant must abandon his appeal because of inability to produce the thousands of dollars necessary for a Reporter's Transcript when those five items of dispute may be resolved without difficulty. Our rules of Court entitle him to appeal in this manner; and we intend to insist upon this method of procedure.

"I am certain that if the Court had been apprised of the contents of the letter of February 14, 1956, his order of March 1, 1956, would not have been given. (I am ready to offer to the Court for its perusal my copies of the Partial Transcripts of the testimony of Rose Eisenberg, Morris Eisenberg and Walter Nichols, if Mr. Ross claims that any of the statements in the February 14th letter concerning the page and line numbers of testimony are incorrect."

The court then reset the hearing on the settlement of said statement for March 20, 1956. As to what occurred at this hearing we have been furnished with a reporter's transcript of the proceedings, which shows that petitioners' counsel agreed to strike from the proposed statement the portions thereof objected to in respondent Omansky's Item 22. As to certain other objections, petitioners' counsel called the court's attention to pages and line numbers in the partial transcripts covering the testimony in question and offered to present said partial transcripts to the court. After the foregoing discussion, the record reveals the following:

"Mr. SAPIRO (Petitioners' counsel): Now, that leaves us with two major items of dispute. First, there is Mr. Ross's objection Number 21, which seeks to strike from page 13, lines 9 through 20 of the proposed statement, a statement by Mr. Eisenberg that he believed in the representations made to him by Mr. Omansky, that he believed in the termite report, and that he believed in the statements made in the termite report as far as the structural condition of the building was concerned.

"Now, that is the first big item of contention, unless Mr. Ross has changed his attitude toward it.

"The only other big item of contention is as far as his objections 32 and 33 are concerned. Now, both of those deal with the termite report that was furnished to Mr. Eisenberg. Mr. Ross seeks to add to the statement these words:

"'The termite report furnished by Mr. Omansky stated that there were no visible defects. Mr. Dagg testified that such defects as he may have found were invisible and had to be uncovered to become visible.'

"Then he wishes to change a statement made in our proposed settled statement in which we stated that the conditions that Mr. Dagg observed were visible, I think, and he wishes to change it to put the words 'were not visible.'

"As far as the question of the termite report is concerned, according to my recollection and my notes, I believe Mr. Dagg stated that although the termites themselves were not visible, that the condition was visible; that is, the earth would contact what is visible, and to him that was a sign of termite infestation.

"Perhaps Mr. Ross's notes are different, but on that I have a distinct recollection.

"Now, those are the two big issues, as I see it, that are still undetermined, as far as the record is concerned.

"First, as to the statement of the termite man as to whether or not the conditions were visible or not and whether or not the defects were visible or invisible, and second, whether or not Mr. Eisenberg testified that he relied upon the statements of Mr. Omansky and whether or not he relied upon the statements in the termite report, of which my recollection and notes state that he did so testify.

"It is my belief that a reading back of the record on those two particular items would settle those particular items; would settle the matter for everybody.

"THE COURT: I feel that it is impossible to settle this statement without a transcript, counsel, and the former order will stand.

"MR. SAPIRO: Your Honor, could I be heard just one second on this?

"THE COURT: You may.

"MR. SAPIRO: As far as those items are concerned, I would like to know if there are any other items, because if those are the only items——

"THE COURT: The Court has made the ruling, counsel.

"Mr. Sapiro: Could I ask a question—whether or not if we ordered the transcript on those particular items on which we have not had them covered——

"The Court: No, the entire transcript, counsel.

"Mr. Sapiro: Even though we are confined on our settled statement to just appeal on those——

"The Court: I don't think you are, counsel. That is my thought on the matter."

A minute order was thereupon entered reading in part as follows:

"After argument of both counsel the Court finds that it is impossible to settle the statement without a complete transcript of the testimony. The order made March 1 shall stand."

As set forth in Paragraph XI of the petition for a writ of mandate, and unchallenged by respondents' answer, "Said item 21 involves the question as to whether or not petitioner Morris Eisenberg testified that he believed representations made by Michael Omansky and the representations in the termite report concerning termite conditions, the foundation and structural condition of the building, were true.

"Said items 32 and 33 involve the question as to whether or not petitioners' witness Louis Dagg, a structural pest control contractor, testified that the conditions relating to termite infestation observed by him were visible and open to view. The Court took copious notes at the trial and if his memory should prove inadequate, there would be little difficulty in having the Official Court Reporters read back to the Court the two matters in controversy."

Reference to the foregoing excerpts from the reporter's transcript of the final hearing on settlement of the proposed statement, indicates that the court did not deny statements made by petitioners' counsel that the last mentioned items were the only ones in question wherein a partial reporter's transcript might be required, and when petitioners' counsel asked if there were any additional items the court did not answer the inquiry and as to counsel's offer to have a partial transcript prepared as to those items, the court declined the offer.

The rule is now well settled in this state that where an appeal is taken pursuant to rule 7 of Rules on Appeal, full and plenary power over such a record is reposed in the trial judge, subject only to the limitation that he *does not act arbitrarily* (*Burns* v. *Brown,* 27 Cal.2d 631, 636 [166 P.2d 1]; *Averill* v. *Lincoln,* 24 Cal.2d 761, 765 [151 P.2d 119]; *Lande*

v. *Southern Calif. Freight Lines,* 78 Cal.App.2d 417, 420 [177 P.2d 936]; *St. George* v. *Superior Court,* 93 Cal.App.2d 815, 817 [209 P.2d 823]). We are therefore, confronted with the question of whether in refusing to settle the statement on appeal under rule 7 of the Rules on Appeal, unless furnished with a complete transcript of the testimony, the trial judge acted in an arbitrary manner. We are persuaded that he did. We are here confronted with a much different situation than appears in the foregoing cases relied upon by respondents. Petitioners herein proposed the statement on appeal in the usual form. Amendments were offered to it by respondent Omansky and petitioners did not decline, but on the contrary agreed to include many of these amendments in the statement and as to others involving the testimony of certain witnesses, offered to furnish partial reporter's transcripts containing the testimony given by them.

 As was said by this court in *Keller* v. *Superior Court,* 100 Cal.App.2d 231, 236 [223 P.2d 309] : "The very purpose of Rule 7 of Rules on Appeal as stated therein is to permit the filing of a narrative statement 'in lieu of a reporter's transcript,' thus obviating records on appeal being many times longer than there is any necessity for, and which very greatly increases the costs to litigants as well as the labors of the appellate court without any corresponding benefit." A trial judge may not arbitrarily refuse to settle a statement unless there is some justification. "To so hold would place it in the power of the trial judge to deprive a litigant of his right of appeal by simply refusing to perform a plain duty." (*Sansome* v. *Myers,* 80 Cal. 483, 486 [22 P. 212].)

In the instant proceeding there are only five matters as to which the court needs any transcript other than the partial transcripts which petitioners have offered to furnish. These matters are pinpointed in that they refer to the testimony of witnesses, and the judge can either settle the dispute between the parties by reference to his memory, his own notes made during the trial, or having the reporter's notes in those five instances read back to him.

In the case now engaging our attention, without particularizing any deficiencies in the statement proposed and the amendments offered thereto, the trial judge contents himself with saying: "I feel that it is impossible to settle this statement without a transcript," and when petitioners' counsel asked, "As far as those items are concerned, I would like to know if there are any other items, because if there are any

other items, because if those are the only items——'' the trial judge answered, ''The court has made the ruling, counsel.'' And when petitioners' counsel asked, ''Could I ask a question—whether or not if we ordered the transcript on those particular items on which we have not had them covered——,'' the trial judge interrupted to say, ''No, the entire transcript, counsel.''

As was said in *Keller* v. *Superior Court, supra,* page 235: ''Before a litigant can be compelled to expend the sum of $325 for a complete reporter's transcript surely the trial judge, in the interests of justice, should specify wherein the statement as offered and amended is deficient. While a trial judge has undisputed power to settle as the record anything he wants therein, he cannot arbitrarily refuse to settle the record without disclosing a single item of relevant testimony that was omitted from the proffered statement on appeal. Under the facts here present, the respondent judge should either have allowed the amendments and ordered the statement prepared accordingly, or required such other changes as would make it conform to the facts. In ordering amendments to the statement on appeal the trial judge has available (1) the suggestions of the respondents on appeal; (2) the judge's own memory (*Vatcher* v. *Wilbur,* 144 Cal. 536 [78 P. 14]); (3) notes made by the judge during the trial (4 C.J. 257); and (4) the right to recall a witness to repeat testimony (4 C.J. 257); and (5) the right to have the reporter reread such of his notes as may prove helpful.'' (See also *Western States Const. Co.* v. *Municipal Court,* 38 Cal.2d 146, 149-151 [238 P.2d 562].)

As was further stated in *Keller* v. *Superior Court, supra,* page 236: ''Respondent judge was not required to sign the proposed statement, it was his duty merely to settle it, and this implied that he should amend it, or cause it to be amended, so as to make a fair statement. If he knows wherein the proposed statement and amendments offered thereto are deficient he should point out such deficiencies and the reasons for requiring a complete reporter's transcript in order to settle a fair statement.''

Under the circumstances present in the instant case, we are satisfied it was not a proper exercise of the discretion vested in respondent judge to require petitioners herein to incur an expense of some $1,300 in furnishing a complete transcript of the reporter's notes as a condition for settling the statement on appeal.

Let a peremptory writ of mandate issue requiring respondent judge to settle the statement on appeal in accordance with the views herein expressed.

Doran, J., and Fourt, J., concurred.