[Civ. No. 34072. Second Dist., Div. Five. June 18, 1970.]

ROGER HERICK, Plaintiff and Appellant, v.
THE MUNICIPAL COURT FOR THE LOS ANGELES JUDICIAL
DISTRICT OF LOS ANGELES COUNTY, Defendant and Respondent;
COUNTY OF LOS ANGELES, Real Party in Interest and Respondent.

**COUNSEL**

Margolis & McTernan and Barry Nakell for Plaintiff and Appellant.

John D. Maharg, County Counsel, Robert R. Taylor and Leonard D. Black, Deputy County Counsel, for Defendant and Respondent.

Roger Arnebergh, City Attorney, Philip E. Grey, Assistant City Attorney, and Samuel C. Pelter, Deputy City Attorney, for Real Party in Interest and Respondent.

**OPINION**

**KAUS, P. J.**—The question on this appeal from the superior court's summary denial of a writ of mandate is whether this indigent appellant[1] from a criminal conviction in a municipal court, is entitled, as a matter of right to a free transcript on appeal without having made any effort to procure a settled statement on appeal as prescribed by rules 184 through 187 of California Rules of Court.

After a lengthy trial, which was reported, the jury found defendant guilty on one of six counts. He was found not guilty on three counts. The jury was unable to agree on the remaining two. These were eventually dismissed under the provisions of section 1385 of the Penal Code and appellant was sentenced to 30 days in the county jail, one day suspended. He filed his notice of appeal and moved the municipal court to order the preparation of a reporter's transcript at the county's expense. The motion was denied. Although the court gave appellant a 15-day extension to file a proposed statement on appeal, none was filed. Instead he petitioned the superior court for a writ of mandate to compel the municipal court to provide him with a free reporter's transcript. The petition was supported by appellant's declaration concerning his indigency and a declaration of his attorney with respect to his need of a reporter's transcript for adequate presentation

---

[1]The superior court held that the petition did not adequately show appellant's indigency. It is a close question whether an alternative writ should not have issued on that threshold issue. If we considered that point and came to the conclusion that such a writ should have issued, we would not have to reach the basic problem of this appeal. Then, if the superior court, after a hearing, made a finding on the question of indigency, the chances are that several months from now we would again be faced with the transcript issue. Since the incident out of which the basic criminal prosecution arose took place over two and one-half years ago, no purpose but further delay would be served by refusing to decide that issue at this time. (*Hagan* v. *Superior Court*, 53 Cal.2d 498, 501-502 [2 Cal.Rptr. 288, 348 P.2d 896].) We therefore assume indigency for the purpose of this opinion.

of the appeal.[2] The superior court denied the petition without holding a hearing; and this appeal followed.[3]

In this court it is contended that under applicable principles the facts alleged in the petition entitled appellant at least to the issuance of an alternative writ of mandate, to give him his day in court to prove the truth of the allegations in the petition. Alternatively it is argued that, as a matter of constitutional right, an indigent defendant who is convicted in the municipal court is entitled to a free transcript without first having attempted to obtain a settled statement. The claim is that a denial of such a transcript is a violation of the equal protection clause in that: (a) a rich defendant can order a transcript and have it available on his appeal as a matter of course without any requirement relating to an attempt to procure a settled statement; and (b) if a person is convicted in the superior court, he is entitled to a free transcript as a matter of right, although the difference between a misdemeanor conviction in that court and in the municipal court is unrelated to any rational fiscal objective. (*Rinaldi* v. *Yeager,* 384 U.S. 305, 309-310 [16 L.Ed.2d 577, 580-581, 86 S.Ct. 1497].)

### THE SUMMARY DENIAL OF THE PETITION

Appellant claims that his petition below adequately alleged facts which, if true, entitled him to a free transcript under prevailing law and that the summary denial was, therefore, error.

The most thorough discussion of the problem of free transcripts on misdemeanor appeals from the municipal court appears in *Preston* v. *Municipal Court,* 188 Cal.App.2d 76, 81-88 [10 Cal.Rptr. 301]. In that case the court

---

[2]"Barry Nakell declares: 1. I am the attorney for Roger Herick, defendant in the above-captioned matter, and I represented him at his trial. 2. The presentation of evidence and argument by counsel in this matter consumed nine full days. The prosecution called at least five witnesses and introduced a large quantity of exhibits. A large number of legal issues were raised by defendant Herick before and during the course of this trial. The evidence at trial and legal points raised are too numerous and complex to be compiled at a later date from memory and notation. I am unable sufficiently to remember many of the relevant portions of the trial, which I regard as crucial for presentation to the appellate court. I cannot therefore safely proceed with an appeal on behalf of defendant Herick without the assistance of the official reporter's transcript. Unless such transcript is made available to defendant Herick, he will be irreparably and irretrievably injured. 3. Defendant Herick is indigent and without sufficient funds to enable him to pay for his defense or to purchase the necessary transcript. I am serving, and have served, as his counsel without fee or compensation. 4. If my client were not indigent but instead had sufficient funds to enable him to purchase the necessary transcript, I would recommend to him that he do so. . . ."

[3]We are advised that the appellate department of the superior court has taken the appeal from the criminal conviction off its calendar pending finality of this proceeding.

held that indigents are entitled to free transcripts where because of the complexity of the trial proceedings the indigent could not safely proceed with the appeal on the basis of a settled statement. The court recognized that the United States Supreme Court in *Griffin* v. *Illinois,* 351 U.S. 12, 20 [100 L.Ed. 891, 899, 76 S.Ct. 585, 55 A.L.R.2d 1055], had said that the Constitution does not demand that indigents be furnished reporters transcripts where "other means of affording adequate and effective appellate review" may be provided. It was, however, faced with an express finding of the superior court that certain allegations in Preston's petition for a writ of mandate were true. These allegations—some of which were rather conclusional—are set forth in the opinion as follows: ". . . that 'it would be impossible for defendant's counsel to remember' the testimony of various witnesses as to the many checks and receipts involved; that appellant cannot 'safely proceed with her appeal without the assistance of the official Reporter's Transcript'; that without such transcript 'she will be irreparably and irretrievably injured'; that she 'has duly taken each and every step required of her under the law and the Rules on Appeal . . . to be entitled to obtain an Order' for a free transcript; that 'the duty of defendants and respondents herein to order and furnish to petitioner said transcript is an act which the law especially enjoins upon said defendants and respondents herein . . . as a duty resulting from their official positions,' . . ." (188 Cal.App.2d at p. 86.) That being the state of the record the court found, in effect, that the inadequacy of proceeding by way of a settled statement had been determined by the trial court.

*Preston* was followed by *Green* v. *Superior Court,* 191 Cal.App.2d 484 [12 Cal.Rptr. 796]. In *Green* the attorney who was about to handle the appeal had not represented the defendant at the rial and therefore had no knowledge of any errors that might have occurred. He refused to participate in the trial court's efforts to settle a statement on appeal, claiming that the procedure was unconstitutional. The Court of Appeal, however, held: "It is the duty of an indigent person appealing from a judgment of misdemeanor to make a bona fide attempt to procure a settled statement for use upon appeal and only if that fails can he be said to have shown the need for a reporter's transcript to be furnished him at the expense of the county. . . ." (191 Cal.App.2d 484, at pp. 486-487.)

The county counsel, appearing for the respondent court, submits that *Green* is determinative of this appeal. The problem, however, is that about three years after *Green* was decided the Supreme Court came down with *In re Henderson,* 61 Cal.2d 541 [39 Cal.Rptr. 373, 393 P.2d 685]. *Henderson* was a habeas corpus proceeding, brought for the purpose of reinstating an appeal from a misdemeanor conviction, which had been decided against

the petitioner who had unsuccessfully requested a reporter's transcript, without, however, accompanying the request with any showing of indigency. He had made no request for the appointment of counsel on appeal and none had been appointed. The Supreme Court ordered the appeal reinstated, together with the appointment of counsel and the preparation of a free transcript. The failure to request counsel was excused, apparently because the right thereto had not been decided when Henderson appealed. Henderson's conviction had been affirmed in July 1962.[4] *Douglas* v. *California,* 372 U.S. 353 [9 L.Ed.2d 811, 83 S.Ct. 814], was not decided until March 1963 and it was not until the very decision in *Henderson* that *Douglas* was extended to appeals from misdemeanor convictions. The failure to file an affidavit in forma pauperis together with a request for a free transcript was excused because "petitioner did not have the guidance of any statute, rule of court, or decision setting forth the requirement that the request be accompanied by" such an affidavit. Although none of the briefs filed with the court made any issue concerning the alternative procedure of proceeding by way of settled statement on the reinstated appeal, the Supreme Court, perhaps adverting to *Green,* but not citing the case, said: "There is nothing in the present case to warrant a determination that a settled statement was prepared or that it would have afforded an adequate method of review of the issues raised, including the sufficiency of the evidence to support the conviction. On this record we must conclude that petitioner is entitled to have his appeal reinstated and to be supplied with a free reporter's transcript." (61 Cal.2d at p. 543.)

One can read the passage just quoted as a holding that once indigency is established, the burden of producing evidence concerning the constitutional adequacy of a settled statement devolves on the People. This would, however, lead to an absurd result: It would mean that the People must perform the very task which the court rules impose on the appellant, for just as in the vast majority of cases the only practical way of proving that a settled statement is inadequate is to try to get one, there is really no way of proving the adequacy of a settled statement, other than by exactly the same method. We do not believe that the quoted passage in *Henderson* was intended to place the burden of initiating an attempt to procure a settled statement on the People. Rather, we feel that *Henderson* should be confined to its own peculiar facts: two and one-half years had elapsed since the trial and it was highly unlikely that the appellant would be represented by his trial counsel on the reinstated appeal. The court apparently simply felt that in such an unusual situation, it would be futile to order an attempt to obtain a settled statement.

---

[4]This date does not appear in the reported opinion. Our information is based on the actual record which we have read.

The only other relevant decision is *Muller* v. *Municipal Court, 259 Cal. App.2d 177 [66 Cal.Rptr. 367]*, where, by dictum, the court interpreted *Henderson* as implying "some amelioration" of the "rigid" requirement of *Green* that a showing of a bona fide attempt to secure a settled statement was essential to prove the need for a reporter's transcript and said that "other acceptable means of showing inadequacy" of the settled statement procedure were "readily conceivable."

■ We therefore think it to be the law that except under extraordinary circumstances an attempt to secure a settled statement is a prerequisite to the ripening of an indigent's right to a free transcript. ■ No such circumstances are shown in this record.[5]

Counsel for appellant attempted to explain his failure to attempt to seek settlement of a statement on appeal by pointing to the length of the trial, the number of witnesses, the number of exhibits, the large number of legal issues and the difficulty of proceeding from memory and notation. Although counsel stated that he was "unable sufficiently to remember many of the relevant portions of the trial" he nevertheless regarded them as "crucial for presentation to the appellate court."[6] Counsel's declared inability to proceed by way of a settled statement is just as compatible with a flawless trial as it is with one in which the court erred so much that counsel could not count the ways—not even one. If the declaration filed in this instance is sufficient to negative the necessity of a good faith attempt to obtain a settled statement, then that requirement simply does not exist as long as a lot of witnesses are called and many exhibits are admitted or rejected. We note that while the declaration refers to the "large number of legal issues" not a single one is specifically mentioned. Surely if an attorney gets through with a trial under the impression that a large number of legal issues will be involved in the appeal, we have the right to expect that he will at least list those few that come most readily to mind. When, however, counsel's position is, in effect, that there was something wrong with the trial, but that he

---

[5]It must be noted that when the superior court denied the petition for a writ of mandate without holding a hearing, it had more than the four corners of the petition before it. In support of its presumptively correct action, we are entitled to assume that it took judicial notice of the contents of the municipal court file. Further, the judge who ruled on the petition, had previously held a hearing on an earlier, similar petition, which arose out of an attempt by appellant to obtain a reporter's transcript for use at a then contemplated motion for a new trial. That mandate proceeding was eventually dismissed as moot.

[6]We are not critical of counsel who has most ably and without compensation stood by appellant from the very inception of these proceedings. He has acted throughout in the best tradition of our profession.

cannot put his finger on it, one is entitled to suspect that the only thing wrong was the result.[7]

Further, the records which the superior court was entitled to consider showed defense counsel to be exceptionally able. The court had before it a partial transcript of the municipal court hearing held in connection with the previous request for a free transcript to be used at the motion for new trial in which the trial court, very gently, expressed doubt that in view of counsel's ability he needed such a transcript to argue that motion. At that hearing the trial court also made the remark quoted in the footnote.[8] The superior court was entitled to consider that competent counsel, even in the heat of a criminal case, knowing of, though disagreeing with, the requirement of *Green,* could make brief notes of such rulings as might provide the basis for an appeal. Finally, the superior court could consider that, had the defense made some effort to serve and file a proposed statement on appeal, the municipal court would have held a hearing under California rule 187 for the purpose of settling the proposed statement and any proposed amendments filed pursuant to rule 185, and that at such hearing the court would undoubtedly have had the right to have the reporter read relevant portions of his notes. (Cf. *Western States Constr. Co.* v. *Municipal Court,* 38 Cal.2d 146, 149 [238 P.2d 562]; *Eisenberg* v. *Superior Court,* 142 Cal.App.2d 12, 19 [297 P.2d 803]; *Keller* v. *Superior Court,* 100 Cal.App.2d 231, 235 [223 P.2d 309].)

We recognize that there may be cases which truly present the paradox which appellant claims to be involved here: that without a transcript the appellant in the criminal case cannot even take the first step leading to the preparation of a settled statement, which is the very step he has to take to get a transcript. With all respect, unless the court had to accept counsel's *ipse dixit* on the point, the declaration filed below does not show this to be such a case.

We take cognizance of *Williams* v. *Oklahoma City,* 395 U.S. 458 [23 L.Ed.2d 440, 89 S.Ct. 1818], decided after the briefs in this case were filed. There the United States Supreme Court applied the rule of *Griffin* v. *Illinois, supra,* 351 U.S. 12 to a conviction for what the Oklahoma Court of Crimi-

---

[7]It is noteworthy that nowhere in the declaration is it even suggested that the evidence was insufficient to support the verdict—a contention that can hardly slip one's mind.

[8]"But when we come down to this case we have the simple problem—simple in one sense—that the only conviction was for disturbing the peace. The facts surrounding the event are pretty clear in the court's mind as testified to by the witnesses and Mr. Herick in particular. The major rulings of the court, I think I can't recite them in detail at the moment, but with regard to certain matters that were raised by defense counsel, I remember them, I think, in some degree."

nal Appeals had described as a "petty offense." There is nothing in *Williams* which militates against our decision. Just as in California, the Oklahoma procedure permitted the appellant to proceed with a settled statement or a transcript. (Okla. Stat. Ann., tit. 22, § 1060 (Supp. 1968).)[9] The court's opinion makes no reference to the alternative to a reporter's transcript. The obvious reason for the omission is that the trial court had found "that neither petitioner nor his appointed counsel could make up a transcript of the trial proceedings from memory." (395 U.S. 458, 459 [23 L.Ed.2d 440, 442].)

## EQUAL PROTECTION

■ We now turn to the claim that for the two stated reasons any requirement that an indigent must first attempt to proceed by way of settled statement denies him the equal protection of the laws.

Unquestionably a defendant who can afford it can simply order a reporter's transcript, while in most cases the indigent must make the attempt prescribed by *Green*. Certainly this discriminates, to some extent, against the indigent, but we are foreclosed by previous decisions of our own Supreme Court from holding that such discrimination is "invidious" within the meaning of *Griffin*. In *People* v. *Hill*, 67 Cal.2d 105 [60 Cal.Rptr. 234, 429 P.2d 586], the defendant on a felony appeal had attempted to obtain a transcript of counsels' arguments which were not part of the normal record on appeal. (Cal. Rules of Court, rule 33.) He did not, however, show the materiality of the augmented record by stating the points on appeal on which he intended to rely. He simply claimed that he was entitled to the transcript without any such showing, because a rich man would have been. The court met the point as follows: "Although under California procedure some discrimination between indigent and nonindigent defendants does exist, we are of the view that it does not deny equal protection of the law. (Cf. *People* v. *Chavez*, 243 Cal.App.2d 761, 767 [52 Cal.Rptr. 633].) While it is true that a nonindigent may purchase a complete transcript without giving reasons therefor, and while the indigent must give reasons, this discrimination is not invidious, because the indigent will be furnished all materials necessary for 'adequate consideration of the errors assigned.' (*Draper* v. *Washington*, 372 U.S. 487, 497 [9 L.Ed.2d 899, 906, 83 S.Ct. 774]; see also *Eskridge* v. *Washington State Board of Prison Terms & Paroles*, 357 U.S. 214 [2 L.Ed.2d 1269, 78 S.Ct. 1061].) The appellant was present at his trial and should have some idea of what particular aspect of argument to the jury offended his sense of justice. (*People* v. *Hagan, supra*, 203

---

[9]The opinion refers to a "case-made." This appears to be a record furnished to the appellate court very similar to our settled statement. (*Thompson* v. *Fulton*, 29 Okla. 700 [119 P. 294].)

Cal.App.2d 34, 39 [21 Cal.Rptr. 116].) All that is required of him is that he signify with some certainty how materials not included in the normal transcript may be useful to him on appeal. His appellate counsel may also be able to ascertain the materiality of these extra materials by discussing the case with trial counsel and with defendant, and by examining the documents and materials that are furnished as part of the normal transcript. (Compare *Hardy* v. *United States, supra,* 375 U.S. 277, 280-281, fn. 3 [11 L.Ed.2d 331, 334-335, 84 S.Ct. 424], discussing, the problems facing appellate counsel when he has no transcript at all to guide him in ascertaining the errors which may be urged in order to show the materiality of a transcript to errors urged on appeal.)" (67 Cal.2d at pp. 124-125.)

Less directly in point but nevertheless relevant is *People* v. *Shipman,* 62 Cal.2d 226 [42 Cal.Rptr. 1, 397 P.2d 993]. There the court discussed the rule that in California we do not furnish counsel to indigents to aid them in preparing *coram nobis* petitions.[10] The court said: "A state may, however, adopt reasonable standards to govern the right to counsel in *coram nobis* proceedings. These standards may preclude absolute equality to the indigent, but, as the United States Supreme Court pointed out in the *Douglas* case, absolute equality is not required; only 'indivious discrimination' denies equal protection. (*Douglas* v. *California,* 372 U.S. 353, 356-357 [83 S.Ct. 814, 9 L.Ed.2d 811, 814-815].) . . . In habeas corpus cases we require a convicted defendant to allege with particularity the facts upon which he would have a final judgment overturned and to disclose fully his reasons for any delay in the presentation of those facts. (*In re Swain,* 34 Cal.2d 300, 304 [209 P.2d 793].) We then examine his allegations in the light of any matter of record pertaining to his case (see California Rules of Court, rule 60) to determine whether a hearing should be ordered. We recognize that these rules, applicable as well to petitions for *coram nobis,* place indigent petitioners in a less advantageous position than those with funds to retain counsel and employ investigators. It bears emphasis, however, that the ordinary processes of trial and appeal are presumed to result in valid adjudications. Unless we make the filing of adequately detailed factual allegations stating a prima facie case a condition to appointing counsel, there would be no alternative but to require the state to appoint counsel for every prisoner who asserts that there may be some possible ground for challenging his conviction. Neither the United States Constitution nor the California Constitution compels that alternative. . . ." (62 Cal.2d at p. 232.)

We find no denial of equal protection in the requirement that an in-

---

[10]If the petition is adequate and a hearing is ordered, counsel must then be appointed to represent the defendant at the hearing. (*People* v. *Shipman, supra,* 62 Cal.2d at pp. 232-233.)

digent must make a bona fide attempt to proceed by way of settled statement. We emphasize, however, that in so holding we assume, as a matter of course, willing cooperation on the part of the prosecution, the court and its reporter. Cases may well arise where the total expense to the taxpayer of lending such cooperation to the appellant may exceed the cost of preparing a transcript. In such a case the trial court may, in the exercise of its discretion, order that a free transcript be furnished.[11]

Finally, appellant points to the fact that a defendant convicted of a misdemeanor in the superior court is entitled to a free transcript as a matter of right without any condition relating to a previous attempt to proceed by way of settled statement.

The question of classification is not as simple as the argument suggests. While it is perfectly true that a defendant may emerge from a superior court trial convicted of a misdemeanor and nothing else, that is possible only if that misdemeanor is either an offense necessarily included in a felony or properly joined with a felony under the rule of *Kellett* v. *Superior Court,* 63 Cal.2d 822, 826-827 [48 Cal.Rptr. 366, 409 P.2d 206]. Before such a trial can take place a felony charge must have passed muster before a grand jury or a magistrate and, if challenged under section 995 of the Penal Code, before a superior court judge. The fact that as things eventually turn out nothing but a misdemeanor conviction results, does not prove that a legislative classification which distinguishes between procedures applicable to defendants initially charged with a more serious crime and those not so charged, is unreasonable.

The judgment is affirmed.

Stephens, J., and Aiso, J., concurred.

---

[11]One of the elements which would enter into the exercise of discretion is whether the trial court feels that the indigent is using his duty to attempt to obtain a settled statement as a weapon with which to extort a transcript out of a busy judge who wants to get on with his calendar.