[Crim. No. 22659. First Dist., Div. One. Dec. 8, 1981.]

In re ANTONIO FRANCOIS ARMSTRONG on Habeas Corpus.

COUNSEL

James R. Jenner, Public Defender, and Jay B. Gaskill, Assistant Public Defender, for Petitioner.

George Deukmejian, Attorney General, Robert H. Philibosian, Chief Assistant Attorney General, William D. Stein, Assistant Attorney General, Robert R. Granucci and Michael Buzzell, Deputy Attorneys General, for Respondent.

OPINION

ELKINGTON, J.—On the habeas corpus petition of Antonio Francois Armstrong we consider the constitutionality of a practice of some municipal courts not to record verbatim, although requested by the defendant, the testimony and other oral proceedings of criminal misdemeanor cases by a phonographic reporter, or electronic recording device, or otherwise.

Petitioner Armstrong had been convicted in a municipal court of Alameda County of possession of a switchblade knife. He was sentenced to 30 days in the county jail; the sentence was then suspended and he was placed on probation. He was thereafter arrested on suspicion of stealing

money from his employer, a bakery establishment, and probation revocation proceedings were instituted.

Four witnesses testified at the hearing, two for the People and two for Armstrong. The incriminating evidence was entirely circumstantial. Armstrong and several others worked with flour for their bakery employer. The thief had apparently tracked flour markings to the area where the employer's money was kept. Proof of Armstrong's guilt depended upon just where the witnesses had placed the markings.

■ At the probation revocation hearing Armstrong had not requested utilization of a phonographic reporter or an electronic recording device because he and his attorney knew it would be "futile" under the well-known above-described practice of the county's municipal courts.

At the hearing's conclusion the municipal court revoked Armstrong's probation and reimposed the 30-day sentence which had been suspended.

Armstrong appealed to the superior court from the order revoking probation. No reporter's notes or other verbatim record of the hearing being available, he and the prosecutor endeavored without success to agree upon a "settled statement on appeal." Armstrong's contention was that the witnesses had placed flour-covered shoe prints and smudges in locations unrelated to, and not leading from, his work area, and that there was thus no substantial evidence of his guilt. The prosecutor argued to the contrary. Nevertheless, a tentative and incomplete statement on appeal was prepared, leaving to the municipal court judge the recollection and insertion of missing and contested evidentiary facts. The statement *as presented* was somehow filed in the superior court without signature of, or certification by, the municipal court judge.

Without decision on the appeal, the superior court remanded to the municipal court with the following order: "[I]n the absence of a reporter's verbatim transcript..., the trial court must...certify a settled statement of the evidence relied upon,..."

Thereupon and more than *six months* after the probation revocation hearing the earlier statement, this time with interlineations by the judge, was refiled in the superior court with a certification "that the attached settled statement is a true and correct record of the testimony presented at the revocation hearing."

Both the People and Armstrong insisted that the "settled statement" was *not* "a true and correct record of the testimony presented...."

Nevertheless, the superior court on the appeal affirmed the municipal court's order revoking probation.

Thereafter the state's Supreme Court, on Armstrong's petition for habeas corpus, issued its order to show cause, returnable before this court.

We make some relevant observations.

■ Upon a probation revocation proceeding in a criminal case, no less than upon others, the defendant is entitled to "due process safeguards." (*People* v. *Vickers* (1972) 8 Cal.3d 451 [105 Cal.Rptr. 305, 503 P.2d 1313], *passim.*)

■ "Although the United States Supreme Court has never held that states are required to provide appellate review, '...once established, these avenues must be kept free of unreasoned distinctions that can only impede open and equal access to the courts.'" (*March* v. *Municipal Court* (1972) 7 Cal.3d 422, 427 [102 Cal.Rptr. 597, 498 P.2d 437, 66 A.L.R.3d 945]; and see *Williams* v. *Oklahoma City* (1969) 395 U.S. 458, 459 [23 L.Ed.2d 440, 442, 89 S.Ct. 1818]; *Rinaldi* v. *Yeager* (1966) 384 U.S. 305, 310 [16 L.Ed.2d 577, 581, 86 S.Ct. 1497].)

The right of "equal access" to the courts rests upon the "'constitutional guaranties of *due process* and *equal protection*....'" (*March* v. *Municipal Court, supra*, 7 Cal.3d 422, 427, italics added; and see *Preston* v. *Municipal Court* (1961) 188 Cal.App.2d 76, 83-84 [10 Cal.Rptr. 301]; *Griffin* v. *Illinois* (1956) 351 U.S. 12, 17-18 [100 L.Ed. 891, 898, 76 S.Ct. 585, 55 A.L.R.2d 1055].)

"The courts have been particularly careful to inspect classifications relating to the criminal process,..." (*United States* v. *Thompson* (D.C.Cir. 1971) 452 F.2d 1333, 1340 [cert. den., 405 U.S. 998 (31 L.Ed.2d 467, 92 S.Ct. 1251)].) And where one's "personal liberty is at stake," a statutory scheme "requires application of the strict scrutiny standard of equal protection analysis. Accordingly, the state must establish both that it has a 'compelling interest' which justifies the challenged procedure and that the distinctions drawn by the procedure

are necessary to further that interest." (*In re Moye* (1978) 22 Cal.3d 457, 465 [149 Cal.Rptr. 491, 584 P.2d 1097].)

"Providing equal justice for poor and rich, weak and powerful alike is an age-old problem. People have never ceased to hope and strive to move closer to that goal. This hope, at least in part, brought about in 1215 the royal concessions of Magna Charta: 'To no one will we sell, to no one will we refuse, or delay, right or justice. . . . No free man shall be taken or imprisoned, or disseised, or outlawed, or exiled, or anywise destroyed; nor shall we go upon him nor send upon him, but by the lawful judgment of his peers or by the law of the land.' These pledges were unquestionably steps toward a fairer and more nearly equal application of criminal justice. In this tradition, our own constitutional guaranties of due process and equal protection both call for procedures in criminal trials which allow no invidious discriminations between persons and different groups of persons. Both equal protection and due process emphasize the central aim of our entire judicial system—all people charged with crime must, so far as the law is concerned, 'stand on an equality before the bar of justice in every American court.'" (*Griffin* v. *Illinois, supra*, 351 U.S. 12, 16-17 [100 L.Ed. 891, 897-898]; fn. omitted.)

It is now settled law that the state must allow access by an appealing defendant in a criminal case, to ""'a record of sufficient completeness" to permit proper consideration'" of his appeal. (*March* v. *Municipal Court, supra*, 7 Cal.3d 422, 428; and see *Draper* v. *Washington* (1963) 372 U.S. 487, 499 [9 L.Ed.2d 899, 907, 83 S.Ct. 774].)

Although there was some earlier authority to the contrary, it became settled that no distinction will be drawn between the rights of indigent, and nonindigent, persons convicted of *felonies* who have appealed their convictions, to have an appropriate record on appeal furnished at the expense of the state. (*March* v. *Municipal Court, supra*, 7 Cal.3d 422, 428, fn. 3; *People* v. *Victor* (1965) 62 Cal.2d 280, 288-289 [42 Cal.Rptr. 199, 398 P.2d 391]; *In re Henderson* (1964) 61 Cal.2d 541, 542-543 [39 Cal.Rptr. 373, 393 P.2d 685]; *People* v. *Carter* (1961) 56 Cal.2d 549, 567 [15 Cal.Rptr. 645, 364 P.2d 477]; *In re Dixon* (1953) 41 Cal.2d 756, 760 [264 P.2d 513]; *People* v. *Smith* (1949) 34 Cal.2d 449, 453 [211 P.2d 561]; *In re Paiva* (1948) 31 Cal.2d 503, 510 [190 P.2d 604].)

Today, the former distinction between *felonies* and *misdemeanors* has been abandoned. Insofar as the right of a convicted defendant to an adequate record on appeal is concerned, a "distinction between felony and nonfelony offenses" will no longer "satisfy the requirements of the Fourteenth Amendment...." (*Mayer* v. *City of Chicago* (1971) 404 U.S. 189, 195-196 [30 L.Ed.2d 372, 378-379, 92 S.Ct. 410].) That high holding had been presaged by Justice Tobriner, then sitting on this division of our court, in this manner: "[T]he argument that we should distinguish between felonies and misdemeanors dissolves in the common formula of the penalty: both types of crime carry the sanction of fine and imprisonment. That the imprisonment may be longer for the felony than for the misdemeanor does not detract from the fact that both sanctions involve loss of liberty. While there are many obvious differences between the misdemeanor and the felony, and the former, of course, imposes a lighter penalty, we do not believe the difference justifies the mutilation of the right of appeal by deprivation of the transcript." (*Preston* v. *Municipal Court, supra,* 188 Cal.App.2d 76, 84-85.)

This judicial abolition of the distinction between a convicted felon's, and a convicted misdemeanant's, constitutional right to an adequate appellate record manifestly removed any previous decisional or statutory provision, if any there were, that only those convicted of *felonies* were entitled to such a record at state expense.

And it seems desirable at this point to emphasize that we are not here concerned with any particular kind of record for presentation to, and use by, an appellate court. *March* v. *Municipal Court, supra,* 7 Cal.3d 422, 428, instructs that: "What constitutes a 'record of sufficient completeness' depends on the contentions being urged in the appeal. Sometimes a statement of the facts agreed to by both sides will be sufficient, and even when the contentions go to the rulings on evidence or its sufficiency, requiring access to a verbatim transcript, the transcript provided can be limited to the portions relevant to those issues." *Draper* v. *Washington, supra,* 372 U.S. 487, 495 [9 L.Ed.2d 899, 905], states: "Alternative methods of reporting trial proceedings are permissible if they place before the appellate court an equivalent report of the events at trial from which the appellant's contentions arise. A statement of facts agreed to by both sides...might...be [an] adequate substitut[e], equally as good as a transcript."

Code of Civil Procedure section 274c provides that in a *civil proceeding*, a *municipal court* official reporter "must, *at the request of either*

*party or of the court*...take down in shorthand all the testimony" and other oral proceedings, but that "in a *criminal action or proceeding*" the official reporter must "take down" such proceedings only upon the *discretionary order* of the court. (The italics of this paragraph are supplied.)

On the other hand, a related statute, Code of Civil Procedure section 269, states that in *superior court* criminal actions the reporter shall "take down" such proceedings "*on the order of the court, the district attorney, or the attorney for the defendant*...." (Italics added.)

Government Code section 72194.5 states: "Whenever an official court reporter or a temporary court reporter is not available to report a...misdemeanor criminal proceeding in a municipal or justice court, the court *may order* that such action or proceeding be electronically recorded, including all the testimony [and other proceedings]. The electronic recording device and appurtenant equipment shall be of a type approved by the Judicial Council for courtroom use." (Italics added.) Section 72194.5 has been implemented by rule 980.5, California Rules of Court.

It will be seen that under these statutes a criminally charged misdemeanor defendant in the municipal court *is not*, while a similarly charged felony defendant in the superior court *is*, as a matter of right, entitled to have "taken down," all related testimony and oral proceedings. Further, the alternative availability of an electronic recording device in a misdemeanor case is not a matter of right, but is discretionary with the court.

The here questioned practice is apparently founded upon the above-noted statutes.

Armstrong's contention is that such statutes, which permit the municipal court to deny defendants of misdemeanor criminal actions the availability of a phonographic reporter, or an electronic recording device, or some equivalent means of reasonably assuring an accurate verbatim account of the courtroom proceedings, fail to comport with constitutional principles of *due process* and *equal protection of the laws.*

As has been noted, an adequate appellate review requires a "record of sufficient completeness" to permit proper consideration of appellate

contentions. And: "Alternative methods of reporting trial proceedings are permissible if they place before the appellate court an equivalent report of the events at trial from which the appellant's contentions arise. A statement of facts agreed to by both sides...might...be [an] adequate substitut[e], equally as good as a transcript." (*Draper* v. *Washington, supra*, 372 U.S. 487, 495 [9 L.Ed.2d 899, 905].)

But where the parties are not in agreement, and the settled statement must depend upon fading memories or other uncertainties, it will ordinarily not suffice. It will not form an adequate basis for a criminal appeal where it is "premised upon recollections [of the trial court] as of a time nearly three months after trial" (*Draper* v. *Washington, supra*, 372 U.S. 487, 497 [9 L.Ed.2d 899, 906]), or where the court might or should conclude that one could not "make up a transcript of the trial proceedings from memory" (*Williams* v. *Oklahoma City, supra*, 395 U.S. 458, 459 [23 L.Ed.2d 440, 442]; *Herick* v. *Municipal Court* (1970) 8 Cal.App.3d 967, 975 [87 Cal.Rptr. 646]). A judge whose ruling has been questioned on appeal or otherwise should avoid if possible the "anomaly" of "relying on his memory rather than reported events." (*People* v. *Jenkins* (1963) 223 Cal.App.2d 537, 540 [35 Cal.Rptr. 776].) And there is "a strong concern on the part of [California] that there be adequate safeguards for the accurate recording of court proceedings." (*Richards* v. *Townsend* (N.D.Cal. 1969) 300 F.Supp. 529, 531.) The above-noted high authority, including applicable statutes, we opine, mandates that a state shall provide, upon the defendant's request, some method of recording verbatim, the testimony and other oral proceedings of a felony or misdemeanor criminal action in its superior, municipal and justice courts. Anything less will deny "a record of sufficient completeness" and thus an "adequate appellate review."

In the case at bench, had a phonographic reporter's services or an electronic recordation been requested and available at the probation revocation hearing, the uncertainties of the disputed settled statement would probably have been resolved by a simple reference to the reporter's untranscribed notes or the recording. (See *Herick* v. *Municipal Court, supra*, 8 Cal.App.3d 967, 974.)

And finally we observe the express holding of the United States District Court for the Northern District of California, in *Richards* v. *Townsend* (N.D.Cal. 1969) 303 F.Supp. 793, 795, that because of the above-described shortcomings "the right of appeal is effectively denied Alameda County misdemeanants who find themselves [as did Arm-

strong in the case before us] unable to obtain settled statements,..."
On appeal, the United States Court of Appeals, Ninth Circuit, stated:
"We agree with the District Court that in order to afford appellee an
effective and meaningful review on appeal the State of California must
either furnish her with a transcript of her trial proceedings or grant her
a new trial. That portion of the order, however, requiring the presence
of an official reporter at any retrial is stricken." (*Richards* v. *Townsend*
(9th Cir. 1971) 444 F.2d 528, 529.)

■ For these several reasons we hold that the complained of prac-
tice of the municipal courts of Alameda County is violative of the "due
process" and "equal protection of the laws" provisions of the Fourteenth
Amendment, and of this state's Constitution, article I, section 7.

We have not failed to consider the Attorney General's suggestion, on
rehearing, that we have failed to take into account Penal Code section
1045. That section was enacted in 1980 and became effective *after* the
municipal court proceedings here at issue. It is therefore inapposite to
our instant determination. But since it would, at least ordinarily, be ap-
plicable upon reinstitution of probation revocation proceedings against
Armstrong, we treat the suggestion as a request that we examine the ef-
fect of section 1045 upon our holding, thus to avoid unnecessary future
litigation.

Penal Code section 1045 provides: "In any misdemeanor or infraction
matter, where a verbatim record of the proceedings is not required to be
made and where the right of a party to request a verbatim record is not
provided for pursuant to any other provision of law or rule of court, if
any party makes a request at least five days in advance and deposits the
required fees, the court shall order that a verbatim record be made of
all proceedings. Except as otherwise provided by law or rule the party
requesting any reporting, recording, or transcript pursuant to this sec-
tion shall pay the cost of such reporting, recording, or transcript. [¶]
*This section shall cease to be operative upon a final decision of an ap-
pellate court holding that there is a constitutional right or other
requirement that a verbatim record or transcript be provided at public
expense for indigent or any other defendants in cases subject to the
provisions of this section.*" (Italics added.)

We have, by our instant decision, held that, upon request therefor,
there is a constitutional right that a verbatim record be provided at
public expense for all defendants in misdemeanor matters. According to

section 1045's express terms it will "cease to be operative" when, and if, our decision shall become final. We need not resolve other contentions concerning its validity.

So also we have considered Armstrong's argument concerning the shortcomings of verbatim recording by electronic equipment. █ We hold only that a misdemeanor defendant, upon his request, is constitutionally entitled to a verbatim "record of sufficient completeness" permitting proper consideration of an appeal which might thereafter be taken. If the claimed inadequacies of electronic recording shall hereafter be established by judicial experience, or otherwise, the constitutional requirement will not have been met.

Applying applicable judicial criteria for determining "whether a constitutional ruling is to be applied retroactively or prospectively" (*Mills v. Municipal Court* (1973) 10 Cal.3d 288, 308 [110 Cal.Rptr. 329, 515 P.2d 273]), we declare that, except as to Armstrong, the holding we have made shall operate prospectively only, and as to misdemeanor trials and proceedings commenced after this opinion shall become final. (See *Halliday v. United States* (1969) 394 U.S. 831, 832 [23 L.Ed.2d 16, 89 S.Ct. 1498]; *Mills v. Municipal Court, supra*, 10 Cal.3d pp. 308-311; *People v. Nelson* (1972) 8 Cal.3d 463, 467 [105 Cal.Rptr. 314, 503 P.2d 1322] [cert. den., 411 U.S. 968 (36 L.Ed.2d 690, 93 S.Ct. 2158)]; *In re Oglesby* (1974) 36 Cal.App.3d 629, 631-634 [111 Cal.Rptr. 866], and authority there collected.)

The writ of habeas corpus is granted. The order revoking Armstrong's probation is set aside, and the municipal court may take such further proceedings as are in accordance with law and not inconsistent with the views we have expressed.

Racanelli, P. J., and Grodin, J., concurred.