Filed 2/17/26  P. v. Crow CA3

NOT TO BE PUBLISHED

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

THIRD APPELLATE DISTRICT

(Shasta)

----

| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>  v.<br><br>BRENNON CHRISTOPHER CROW,<br><br>    Defendant and Appellant. | C101514<br><br>(Super. Ct. Nos. 23F7301,<br>23F7305) |

Defendant Brennon Christopher Crow appeals from judgments entered in two criminal cases.

The first case was based on an act of strangulation committed against P.R., defendant's girlfriend.  On count 1, a jury found defendant guilty of assault by means

1

of force likely to inflict great bodily injury, and found that defendant inflicted great bodily injury. On count 2, the jury found defendant not guilty of inflicting corporal injury on a girlfriend, but guilty of the lesser included offense of battery on a girlfriend. And on count 4, the jury found defendant guilty of making annoying contact with P.R. by means of an electronic communication device, a misdemeanor.

In the second case, based on a three-month sexual relationship with V., a 16-year-old girl, a jury found defendant guilty of seven counts of unlawful sexual intercourse, two counts of showing child or youth pornography to a minor, one count of oral copulation with a minor, and one count of possession of child or youth pornography.

After denying defendant's new trial motion, which was based on an asserted inconsistency in the verdicts in the first case, the trial court sentenced defendant in both cases to an aggregate determinate term of 17 years in state prison.

Defendant now contends (1) the trial court violated Code of Civil Procedure section 269 and defendant's due process rights by conducting the two trials without an official shorthand reporter; (2) the trial court erred by denying defendant's new trial motion and/or declining to strike the great bodily injury enhancement; (3) the trial court violated Penal Code[1] section 654 by failing to stay the sentence imposed for either the assault or the battery conviction in the first case; and (4) the trial court committed additional sentencing errors.

We will affirm defendant's convictions, reverse the sentence, and remand the matter for a new sentencing hearing. Although proceeding without an official reporter violated Code of Civil Procedure section 269, the error was harmless, given that all proceedings were recorded by an audio recording device and transcribed, providing this court with an adequate record to review defendant's claims on appeal. For that reason,

---

[1] Undesignated statutory references are to the Penal Code.

defendant's due process claim also fails.  The trial court did not err in denying defendant's new trial motion and in declining to strike the great bodily injury enhancement.  Although the jury's great bodily injury finding was inconsistent with its separate implied finding that defendant did not inflict corporal injury resulting in a traumatic condition, the inconsistency shows "no more than jury lenity, compromise, or mistake, none of which undermines the validity of a verdict."  (*People v. Lewis* (2001) 25 Cal.4th 610, 656 (*Lewis*).)  However, as the People properly concede, as to the first case the trial court should have stayed the sentence for either the assault or the battery conviction.  The People nevertheless argue remand is not required because the record clearly demonstrates that the trial court would stay the count with the lesser punishment rather than the count with the greater punishment.  But we conclude remand is the appropriate remedy.  And because defendant will receive a full resentencing, we need not address his additional sentencing claims.

BACKGROUND

*Case No. 23F7301*

Defendant met P.R. online in April 2021.  P.R. was 18 years old and defendant was 30.  They met in person about a week later and began a sexual relationship.  P.R. lived at her grandmother's house, but spent nights with defendant at various places because he did not have a place of his own.  She was 4 feet 11 inches tall and weighed around 110 pounds, whereas defendant was about a foot taller and outweighed her.  Defendant told P.R. he was a professional fighter, which she thought was "cool."  However, she began feeling "on edge" with him.  Around Thanksgiving of 2021, defendant prevented P.R. from leaving his cousin's house by shoving her against a wall, holding her there, and kicking her in the leg.  They broke up around Christmas, but resumed the relationship in February or March 2022.  In April 2022, defendant slapped her across the face.

3

The violent incident leading to defendant's convictions for assault and battery occurred in August 2022. Defendant was upset because someone had "hearted" a picture of P.R. on Facebook. In the text messages, defendant called her a "whore," among other things. When P.R. met up with defendant, she was upset about his text messages, but defendant said she was "stupid" and "overreacting" and he yelled at her. As she tried to get up from a couch, defendant grabbed her by the throat with one hand and held her down on the couch. He continued yelling in her face, telling her she deserved to die and that any other man would already have killed her. Defendant eventually let go of her throat.

P.R. described the pain of being strangled as an eight on a scale of one to 10. During the choking she could not speak or breathe. She felt dizzy and her vision became blurry. She testified to dark bruising on her neck, headaches, lightheadedness, disorientation, and memory problems.

About a week later, P.R. called 911 after another incident.[2] She gave a statement to responding officers and also reported the strangulation incident, then blocked defendant's phone number and social media accounts. Defendant sent her harassing and threatening e-mails.

In September 2022, about a month after the strangulation incident, P.R. was examined by Dr. Sean Dugan, a forensic medical examiner and strangulation expert. Dr. Dugan diagnosed her with a traumatic brain injury caused by the strangulation. We describe his testimony in greater detail in the discussion portion of this opinion. At trial, the prosecution also adduced expert testimony about domestic violence and the cycle of violence that pervades abusive relationships.

---

[2] Count three charged defendant with battery on a girlfriend based on that incident, but the jury acquitted defendant on that count.

The jury found defendant guilty of assault by means of force likely to inflict great bodily injury, and found that he inflicted great bodily injury. It found him not guilty of inflicting corporal injury on a girlfriend, but guilty of the lesser included offense of battery on a girlfriend. The jury also found defendant guilty of making annoying contact with P.R. by means of an electronic communication device.

*Case No. 23F7305*

Defendant met V. in October 2022 when they worked together at a grocery store. V. was 16 years old. When defendant asked how old she was, V. told him she was a minor. In December, they kissed and exchanged phone numbers. A few days later, V. drove to defendant's apartment during a lunch break and they had sex. The next day, V. told him her age. In early 2023, defendant moved into a trailer, where he and V. would smoke marijuana and have sex almost every time she came over. Without V.'s knowledge, defendant made a video recording of them having sex and later showed it to her. Defendant asked V. to send him nude photos and a video of herself masturbating, and she complied.

At the end of March, V.'s father saw the text messages between his daughter and defendant and drove V. to the police station. During an interrogation, defendant admitted having sex with V. and agreed that it happened "pretty much every time [they] met up."

The jury found defendant guilty on seven counts of unlawful sexual intercourse, two counts of showing child or youth pornography to a minor, one count of oral copulation with a minor, and one count of possession of child or youth pornography.

DISCUSSION

I

Defendant contends the trial court violated Code of Civil Procedure section 269 and his due process rights by conducting both of his trials without an official shorthand reporter.

5

Code of Civil Procedure section 269, subdivision (a) provides in relevant part that "[a]n official reporter . . . of the superior court shall take down in shorthand all testimony, objections made, rulings of the court, exceptions taken, arraignments, pleas, sentences, arguments of the attorneys to the jury, and statements and remarks made and oral instructions given by the judge . . . ." It applies in all felony cases in which the defendant requests an official shorthand reporter. (Code Civ. Proc., § 269, subd. (a)(2).) Thus, at least where a request is made, "defendants have a statutory right to have the proceedings recorded . . . by a certified shorthand reporter" rather than an electronic recording device.[3] (*People v. Turner* (1998) 67 Cal.App.4th 1258, 1264 (*Turner*); see *California Court Reporters Assn. v. Judicial Council of California* (1995) 39 Cal.App.4th 15, 33.)

In addition to the statutory right to an official shorthand reporter, "[a] criminal defendant is entitled under the Eighth and Fourteenth Amendments to an appellate record that is adequate to permit meaningful review. [Citations.] An appellate record is inadequate 'only if the complained-of deficiency is prejudicial to the defendant's ability to prosecute his appeal.' [Citation.]" (*People v. Young* (2005) 34 Cal.4th 1149, 1170 (*Young*).)

Defendant objected to proceeding without a court reporter at the start of the first trial. The trial court ruled that trial would proceed with electronic recording due to the unavailability of a certified court reporter, but if a certified court reporter became

---

[3] The Legislature has approved electronic recording in certain types of cases. "If an official reporter . . . is unavailable to report an action or proceeding in a court, subject to the availability of approved equipment and equipment monitors, the court may order that, in a limited civil case, or a misdemeanor or infraction case, the action or proceeding be electronically recorded, including all the testimony, the objections made, the ruling of the court, the exceptions taken, all arraignments, pleas, and sentences of defendants in criminal cases, the arguments of the attorneys to the jury, and all statements and remarks made and oral instructions given by the judge. A transcript derived from an electronic recording may be utilized whenever a transcript of court proceedings is required." (Gov. Code, § 69957, subd. (a).)

6

available, even for a partial day, the reporter would be present in the courtroom. The ruling provided a lengthy background on the statewide reporter shortage, as well as Shasta County Superior Court's recruitment efforts to obtain adequate court reporter staffing. After weighing the various statutory and constitutional rights involved, including defendant's constitutional rights to a speedy trial and an adequate record of the proceedings, the trial court concluded that the trial would proceed and would be electronically recorded. Because no court reporter became available, both of defendant's trials were recorded electronically and extensive transcripts were prepared based on the recordings.

Although Code of Civil Procedure section 269 provided defendant with a statutory right to a certified shorthand reporter rather than an electronic recording, we conclude violation of that statutory right was harmless.

In *People v. Hajek and Vo* (2014) 58 Cal.4th 1144, abrogated on another point by *People v. Rangel* (2016) 62 Cal.4th 1192, 1216, the California Supreme Court held that the trial court's failure to comply with section 190.9, requiring that all proceedings in a capital case be conducted on the record with a court reporter present, was harmless where the record was nevertheless adequate to permit meaningful appellate review. (*Hajek and Vo,* at pp. 1256-1258.) Similarly, here, defendant possessed a statutory right to a certified court reporter, but the trial court's inability to comply with that right, regardless of the reason, was harmless so long as the electronic recording produced an adequate appellate record.

Accordingly, this case turns on whether defendant's constitutional right to an adequate appellate record was violated. In order to satisfy that constitutional right, "a state shall provide . . . some method of recording verbatim, the testimony and other oral proceedings of a felony or misdemeanor criminal action." (*In re Armstrong* (1981) 126 Cal.App.3d 565, 573 (*Armstrong*).) In *Turner, supra*, 67 Cal.App.4th 1258, the appellate court held that the trial court's use of electronic recording satisfied this

7

standard.  Citing *Armstrong*, the *Turner* court noted that "use of a certified shorthand reporter is not the exclusive means of providing an adequate record:  ' "Alternative methods of reporting trial proceedings are permissible if they place before the appellate court an equivalent report of the events at trial from which the appellant's contentions arise. . . ." [Citation.]' [*Armstrong* concluded]:  'In the case at bench, had a phonographic reporter's services *or an electronic recordation* been requested and available . . . the uncertainties of the disputed settled statement would probably have been resolved by a simple reference to the reporter's untranscribed notes or the recording. [Citation.]' [Citation.]" (*Turner,* at p. 1263.)  The court in *Turner* then explained that the electronic recording of the defendant's trial provided him with "a verbatim record from which [the appellate court was] able to review his conviction." (*Ibid*.)  The court concluded that the defendant "failed to demonstrate a violation of constitutional proportions merely because an electronic recording device was employed instead of a certified shorthand reporter." (*Ibid*.)

Here, as in *Turner,* the electronic recording of the proceedings in both of defendant's trials produced an adequate appellate record.  The transcript of the proceedings spans over 2,800 pages.  Defendant has not pointed out any portion of the two trials that are not included in the transcript.  And as the People accurately observe in their briefing, that transcript, in addition to the clerk's transcript, has allowed defendant to file "an opening brief that exceeds 80 pages and raises four substantive claims of error." Defendant acknowledges that the record is sufficient for this court to review those claims. Nevertheless, he notes that the transcript contains "over 2,000 'inaudible' notations" and he asserts "it is impossible to ascertain the potential of other arguable error or seek a stipulated settled statement from trial counsel to reconstruct all of the missing record." It is defendant, however, who "bears the burden of demonstrating that the record is not adequate to permit meaningful appellate review.  [Citation.]  Inconsequential inaccuracies or omissions are insufficient to demonstrate prejudice." (*Young, supra,*

8

34 Cal.4th at p. 1170.) Defendant has not attempted to demonstrate that any "inaudible" notation in this record is anything other than inconsequential. Our review of the record has not been hampered by any missing words. We also note that the trial court did an admirable job to make sure the proceedings stopped when outside noise threatened to interfere with the electronic recording.

Because defendant has not carried his burden of demonstrating an inadequate record resulted from the trial court's use of electronic recording, his constitutional claim fails. For that reason, the statutory violation is harmless. (See *Young, supra*, 34 Cal.4th at p. 1170.)

## II

Defendant next claims the trial court erred by denying his new trial motion and/or declining to strike the great bodily injury enhancement due to inconsistency in the jury's verdicts.

## A

Based on defendant's act of strangling P.R. on the couch, the jury in the first case found defendant guilty of assault by means of force likely to inflict great bodily injury, and also found true an enhancement allegation that he inflicted great bodily injury. But the jury found defendant not guilty of inflicting corporal injury on a girlfriend; instead, the jury found defendant guilty of the lesser-included offense of battery on a girlfriend.

With respect to the crimes alone, the verdicts are not inconsistent. A defendant may be found guilty of assault by means of force *likely* to inflict great bodily injury without inflicting any injury at all. (*People v. Aguilar* (1997) 16 Cal.4th 1023, 1028.) What makes the verdicts inconsistent is the enhancement finding. By finding the great bodily injury enhancement allegation to be true, the jury necessarily found that defendant inflicted a significant, substantial, or serious physical injury on P.R. (See § 12022.7, subd. (f)(1); *People v. Chaffer* (2003) 111 Cal.App.4th 1037, 1042.) But the jury also found, based on the same act of strangulation, that he did not inflict "corporal injury

9

resulting in a traumatic condition." (§ 273.5, subd. (a).) " '[T]raumatic condition' means a condition of the body, such as a wound, or external or internal injury, including, but not limited to, injury as a result of strangulation or suffocation, whether of a minor or serious nature, caused by physical force." (§ 273.5, subd. (d).) In other words, it means a physical injury "of any variety . . . regardless of the seriousness." (*Chaffer,* at p. 1044, italics omitted.) Thus, the jury inconsistently found that defendant's act of strangulation caused both serious physical injury and no physical injury.

Defendant moved for a new trial based on this inconsistency in the verdicts, asking the trial court to grant him a new trial as to the assault count and enhancement allegation. In response, the People acknowledged the inconsistency, but urged the trial court to deny the motion because there was "sufficient credible evidence to support the verdicts." During a brief hearing, the trial court agreed the verdicts were inconsistent and indicated that its tentative ruling would be to strike the great bodily injury enhancement rather than grant a new trial.

Thereafter, the trial court issued a written tentative ruling denying the motion. The tentative ruling explained that although the verdicts were "logically inconsistent," the general rule is that "if verdicts are otherwise supported by substantial evidence, they may stand despite being inconsistent." After concluding that an exception to the general rule did not apply, the trial court found that both counts of conviction, as well as the great bodily injury enhancement, were supported by substantial evidence. After hearing argument from counsel, the trial court took the matter under submission.

The trial court subsequently issued a supplemental tentative ruling further explaining that the exception discussed in the initial tentative ruling had been construed by case law to have "a narrow application to conspiracy cases" and therefore did not apply to defendant's case. The supplemental tentative further stated that sufficient evidence supported the verdicts because the act of strangulation amounted to both an assault by means of force likely to produce great bodily injury and also a battery.

10

According to the trial court, Dr. Dugan's testimony that P.R. suffered a traumatic brain injury supported the jury's additional finding of great bodily injury.

After further argument, the trial court confirmed the supplemental tentative ruling and denied the new trial motion.

B

"As a general rule, inherently inconsistent verdicts are allowed to stand. [Citations.] For example, 'if an acquittal of one count is factually irreconcilable with a conviction on another, or if a not true finding of an enhancement allegation is inconsistent with a conviction of the substantive offense, effect is given to both.' [Citation.] Although ' "error," in the sense that the jury has not followed the court's instructions, most certainly has occurred' in such situations, 'it is unclear whose ox has been gored.' [Citation.] It is possible that the jury arrived at an inconsistent conclusion through 'mistake, compromise, or lenity.' [Citation.] Thus, if a defendant is given the benefit of an acquittal on the count on which he was acquitted, 'it is neither irrational nor illogical' to require him to accept the burden of conviction on the count on which the jury convicted. [Citation.]" (*People v. Avila* (2006) 38 Cal.4th 491, 600 (*Avila*); see *Lewis, supra*, 25 Cal.4th at p. 656 ["inconsistency may show no more than jury lenity, compromise, or mistake, none of which undermines the validity of a verdict"]; *United States v. Powell* (1984) 469 U.S. 57, 64-65 [83 L.Ed.2d 461] (*Powell*); see also § 954 ["acquittal of one or more counts shall not be deemed an acquittal of any other count"].)

"The rule applies equally to inconsistent enhancement findings [citation], and to an enhancement finding that is inconsistent with the verdict on a substantive offense [citation]." (*People v. Miranda* (2011) 192 Cal.App.4th 398, 405.) In such cases, "inconsistent verdicts are allowed to stand if the verdicts are otherwise supported by substantial evidence." (*Ibid.*; see *Lewis, supra*, 25 Cal.4th at p. 656; *People v. York* (1992) 11 Cal.App.4th 1506, 1510.) As the California Supreme Court has explained, "a 'criminal defendant already is afforded protection against jury irrationality or error by

11

the independent review of the sufficiency of the evidence undertaken by the trial and appellate courts. . . . [No] further safeguards against jury irrationality are necessary.' " (*Avila, supra*, 38 Cal.4th at p. 601, quoting *Powell, supra*, 469 U.S. at p. 67.)

The foregoing authorities establish that although the jury inconsistently found that defendant's act of strangulation caused both serious physical injury and no physical injury, the enhancement may stand so long as it is supported by substantial evidence. The trial court so found, and we agree.

P.R. testified to her significant injuries. In addition, Dr. Dugan, a forensic medical examiner and strangulation expert, examined P.R. about a month after the strangulation incident. He testified that she reported symptoms of dizziness, fatigue, disorientation, and gaps in her memory. Dr. Dugan diagnosed her with a traumatic brain injury. Dr. Dugan also testified that about half the people who lose consciousness do not remember the loss of consciousness. He explained that in cases of strangulation, a traumatic brain injury is diagnosed when the patient describes a loss of consciousness or a gap in memory associated with a loss of consciousness.

"The California Supreme Court 'has long held that determining whether a victim has suffered physical harm amounting to great bodily injury is not a question of law for the court but a factual inquiry to be resolved by the jury.' [Citation.] 'Proof that a victim's bodily injury is "great"—that is, significant or substantial within the meaning of section 12022.7—is commonly established by evidence of the severity of the victim's physical injury, the resulting pain, or the medical care required to treat or repair the injury.' [Citation.] '[S]ome physical pain or damage, such as lacerations, bruises, or abrasions is sufficient . . . .' [Citation.]" (*People v. Medellin* (2020) 45 Cal.App.5th 519, 529; see *People v. Escobar* (1992) 3 Cal.4th 740, 745, 749-750 [abrasions, bruising, neck and vaginal pain that lasted for more than a week supported a great bodily injury finding].) A loss of consciousness is also sufficient, even where no medical treatment is necessary. (See *People v. Wade* (2012) 204 Cal.App.4th 1142, 1149 [loss of

12

consciousness was sufficient to support a serious bodily injury finding under section 243]; *People v. Johnson* (2016) 244 Cal.App.4th 384, 391-392 [" 'serious bodily injury' " and " 'great bodily injury' " are " 'essentially equivalent' "].)

We conclude the pain P.R. experienced while being choked, the bruising that lasted for about a week, as well as the lightheadedness, disorientation, and headaches that also lasted for about a week, are sufficient to support the jury's great bodily injury finding. Therefore, the enhancement may stand notwithstanding the inconsistent verdicts. In so concluding, we have considered defendant's argument that Dr. Dugan's "opinion that P.R. suffered a traumatic brain injury . . . was based on theory, but no solid findings." We disagree, but in any event, the great bodily injury finding is sufficiently supported by other evidence in the case. The jury concluded the strangulation resulted in great bodily injury, and that conclusion is supported by substantial evidence.

Nevertheless, defendant argues the trial court erred by not applying an exception to the general rule. There is "a limited judicial exception to [the general rule] which is applicable in conspiracy cases." (*People v. Pahl* (1991) 226 Cal.App.3d 1651, 1657 (*Pahl*).) The exception, established in *In re Johnston* (1935) 3 Cal.2d 32, applies where a defendant is charged with conspiracy, with certain requisite overt acts alleged, as well as separate offenses using the same language used to allege the overt acts. Where the defendant is acquitted of the offenses constituting all overt acts, the conspiracy count may not stand. (*Pahl,* at p. 1657.) However, as in *Pahl*, defendant "was not charged with conspiracy" and thus, the conspiracy exception "does not apply." (*Ibid*.) Also like *Pahl*, defendant relies on an expansive statement of the conspiracy exception. He claims the exception applies not just in conspiracy cases where a defendant has been acquitted of all overt acts, but more broadly "where 'all of the essential elements of the crime of which the defendant was acquitted are identical to some or all of the essential elements of the crime of which the defendant was found guilty.' " *Pahl* concluded that this language "accurately describes the conspiracy exception, but it generalizes as if the exception

13

applies to all crimes. Because it does not, the quoted language is inaccurate and misleading." (*Id*. at pp. 1659-1660.) Thus, notwithstanding the broad language cited by defendant, he is incorrect that the exception applies outside of conspiracy cases. (*Id*. at p. 1658; see also *People v. O'Connor* (1992) 8 Cal.App.4th 941, 948.)

In addition, defendant argues the trial court erred in failing to independently evaluate the evidence as a 13th juror, citing *People v. Lagunas* (1994) 8 Cal.4th 1030, 1038, footnote 6. The standard defendant claims the trial court failed to employ is applicable where a defendant moves for a new trial under section 1181, subdivision 6, and argues that the jury's "verdict or finding is contrary to law or evidence." Although defendant's new trial motion cited and quoted that subdivision, the argument made in the motion, and at the various hearings on the motion, was not that the trial court should independently evaluate the evidence and decide for itself, sitting effectively as a 13th juror, whether P.R. suffered great bodily injury. Instead, defendant specifically argued, as he does on appeal, that the inconsistency in the verdicts required the trial court to grant the new trial motion. Indeed, before assessing defendant's argument that inconsistent verdicts required a new trial, the trial court specifically stated in the initial tentative ruling that defendant was not arguing that the evidence failed to support the verdicts within the meaning of section 1181, subdivision 6. Defense counsel never corrected that observation at either hearing on the motion.

Where a defendant does not properly present or advance an assertion as a ground for a new trial in the trial court, that asserted ground "may not be presented for the first time on appeal." (*People v. Williams* (1957) 153 Cal.App.2d 21, 25; see also *People v. Masotti* (2008) 163 Cal.App.4th 504, 508 ["new trial may be granted only upon a ground raised in the motion"].) Defendant has therefore forfeited his 13th juror claim.

14

## III

Defendant further asserts, and the People concede, that the trial court violated section 654 by failing to stay the sentence imposed for either the assault or the battery conviction in the first case.

Section 654, subdivision (a) provides in relevant part:  "An act or omission that is punishable in different ways by different provisions of law may be punished under either of such provisions, but in no case shall the act or omission be punished under more than one provision."

"Whether a defendant may be subjected to multiple punishment under section 654 requires a two-step inquiry, because the statutory reference to an 'act or omission' may include not only a discrete physical act but also a course of conduct encompassing several acts pursued with a single objective.  [Citations.]  We first consider if the different crimes were completed by a 'single physical act.'  [Citation.]  If so, the defendant may not be punished more than once for that act.  Only if we conclude that the case involves more than a single act—i.e., a course of conduct—do we then consider whether that course of conduct reflects a single ' "intent and objective" ' or multiple intents and objectives." (*People v. Corpening* (2016) 2 Cal.5th 307, 311.)  "Section 654 'prohibits multiple sentences where the defendant commits different acts that violate different statutes but the acts comprise an indivisible course of conduct engaged in with a single intent and objective.' [Citation.]" (*People v. Latten* (2021) 63 Cal.App.5th 574, 577.)

"Whether section 654 applies in a given case is a question of fact for the trial court, which is vested with broad latitude in making its determination.  [Citations.] Its findings will not be reversed on appeal if there is any substantial evidence to support them." (*People v. Jones* (2002) 103 Cal.App.4th 1139, 1143.)

The People concede that section 654 applies.  As already indicated, the assault and the battery convictions were based on the same conduct.  Whether viewed as a single act of strangulation or a course of conduct comprised of holding P.R. down on the couch

15

while strangling her, defendant's intent "was to inflict pain on P.R. and control her because he was mad at her."

Section 654 "now provides the trial court with discretion to impose and execute the sentence of either term, which could result in the trial court imposing and executing the shorter sentence rather than the longer sentence." (*People v. Mani* (2022) 74 Cal.App.5th 343, 379.) Thus, unless the record clearly indicates which sentence the trial court would stay, remand is required to permit the trial court to exercise its discretion. (See *People v. Gutierrez* (2014) 58 Cal.4th 1354, 1391.)

The People argue remand is not required because the record clearly indicates the trial court would not stay the assault conviction. The People rely on the fact that the trial court denied probation and imposed upper term sentences, noting that defendant appeared to lack remorse for his actions and that P.R. suffered real harm. The People conclude such circumstances clearly indicate that the trial court would not stay the sentence on the assault conviction and spare defendant the nine-year prison term. But based on our review of the record, we do not share the People's certainty as to which sentence the trial court would stay or not stay. We therefore remand the matter for full resentencing consistent with amended section 654.**4**

---

**4** In light of this determination, we need not address defendant's remaining assertions of sentencing error. "The full resentencing rule . . . dictates that 'when part of a sentence is stricken on review, on remand for resentencing "a full resentencing as to all counts is appropriate, so the trial court can exercise its sentencing discretion in light of the changed circumstances.' " [Citations.] . . . A full resentencing may involve the trial court's revisiting such decisions as the selection of a principal term, whether to stay a sentence, whether to impose an upper, middle, or lower term, and whether to impose concurrent or consecutive sentences." (*People v. Jones* (2022) 79 Cal.App.5th 37, 45-46; see *People v. Buycks* (2018) 5 Cal.5th 857, 893-895.)

DISPOSITION

Defendant's convictions are affirmed, the sentence is reversed, and the matter is remanded to the trial court for a full resentencing.

                                          /S/
                                      MAURO, J.

We concur:

/S/
HULL, Acting P. J.

/S/
MESIWALA, J.

17