Filed 1/12/26  In re M.C. CA5

## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIFTH APPELLATE DISTRICT

| | |
|---|---|
| In re M.C., a Person Coming Under the Juvenile Court Law. | |
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>        v.<br><br>M.C.,<br><br>    Defendant and Appellant. | F088804<br><br>(Super. Ct. No. 23JL-00167-A)<br><br>**OPINION** |

-ooOoo-

APPEAL from a judgment of the Superior Court of Merced County.  Stephanie L. Jamieson, Judge.

Sangeeta Sinha, under appointment by the Court of Appeal, for Defendant and Appellant.

Rob Bonta, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Kimberley A. Donohue, Assistant Attorney General, Darren K. Indermill and Jessica Trieu-Simerly, Deputy Attorneys General, for Plaintiff and Respondent.

-ooOoo-

M.C., a minor, admitted to committing a battery causing serious bodily injury on a victim at her high school. The juvenile court placed M.C. on deferred entry of judgment (DEJ). Nine months later, the court terminated DEJ, adjudged M.C. a ward of the court, and imposed probation conditions.

M.C. appeals from the juvenile court's order declaring her a ward of the court. M.C. argues the court erred when it did not provide an official court reporter at her dispositional hearing. She contends the failure was prejudicial per se and the transcripts from the electronic recordings were not an adequate substitute. M.C. also contends her trial counsel was ineffective for failing to challenge as unreasonable the terms of probation requiring her to submit to a warrantless search of her person and property, and search of her electronics and cellular devices. The People disagree. We affirm.

## PROCEDURAL BACKGROUND

On November 20, 2023, the District Attorney of Merced County filed a juvenile wardship petition pursuant to Welfare and Institutions Code section 602,[1] alleging that M.C., a minor, committed assault with force likely to produce great bodily injury (Pen. Code, § 245, subd. (a)(4)).

On December 5, 2023, M.C. admitted to an amended count of battery causing serious bodily injury (Pen. Code, § 243, subd. (d)) on the condition of receiving DEJ.

On January 9, 2024, the juvenile court placed M.C. on DEJ pursuant to section 791 and imposed various conditions.

On September 26, 2024, the juvenile court determined that M.C. had been unsuccessful on DEJ and terminated her participation in the program based upon multiple violations outlined by probation, including running away from home and not attending school.

---

[1] Undesignated statutory references are to the Welfare and Institutions Code.

On October 15, 2024, the juvenile court adjudged M.C. a ward of the court, placed her under the general supervision of the probation officer, and imposed various conditions.

<h1 style="text-align:center">FACTUAL BACKGROUND[2]</h1>

On November 17, 2023, a school resource officer responded to a call regarding a fight that occurred in the restroom of a high school.  The victim told the officer that M.C. hit her face with a closed fist.  The victim also told the officer M.C. made her head hit the sink in the restroom.  The officer reviewed video footage of the restroom.  The video footage began when the victim tried to leave the restroom and showed M.C. and the victim shouting at each other.  M.C. pulled the victim down by her hair and kicked the victim onto cement steps.

<h1 style="text-align:center">DISCUSSION</h1>

## I.      The Right to an Official Court Reporter

M.C. argues the juvenile court was required to provide her with a court reporter. She contends the court's failure to provide her with a proper transcript is prejudicial per se, requiring the orders be set aside, or in the alternative, the matter remanded for the creation of a settled record.

The People agree that the juvenile court erred because it was required to provide M.C. with an official court reporter.  However, the People maintain the error was harmless because M.C. was given a transcript of the electronically recorded hearings. We agree with the People.

---

**2**      The facts of the underlying offense are taken from the probation report.

3.

### A. Additional Background

On September 26, 2024, M.C. appeared in juvenile court for DEJ review after the court issued a bench warrant because she ran away from home and violated other rules. The court advised the parties as follows:

> "Pursuant to [S]tanding [O]rder [No.] 2024-03, there is no longer a court reporter assigned to juvenile delinquency proceedings [by order of the presiding judge of the Merced County Superior Court]. All proceedings will be electronically recorded."[3]

The standing order was made effective September 3, 2024, due to a lack of qualified applicants and limited availability of court reporters. (Standing Order No. 2024-03.) Due to the lack of court reporters, the juvenile court resorted to electronically recording the proceedings. Defense counsel filed an objection, which the juvenile court noted and overruled pursuant to the standing order.[4]

---

[3] On April 28, 2025, M.C.'s attorney filed a request for judicial notice. The request seeks this court to take judicial notice of (1) The Superior Court of Merced County, Local Rules, rule 1M; (2) The Superior Court of Merced County Standing Order No. 2024-03; and (3) Administrative records of the Superior Court of Merced County. On July 24, 2025, the People filed a request for judicial notice, seeking this court to take judicial notice of the fact that eScribers is an approved transcription service provider for official acts of the United States Tax Court, the United States Bankruptcy Court for the Central District of California, the United States Bankruptcy Court for the District of Columbia, and the United States District Court for the Eastern District of Virginia. Both requests are unopposed. A "reviewing court shall take judicial notice of" some matters as set forth in Evidence Code sections 451 and 453 and "may" take judicial notice of other matters as described in Evidence Code section 452. (Evid. Code, § 459, subd. (a)) However, the matter to be judicially noticed in either circumstance must be relevant to a material issue in the case. (*Mangini v. R. J. Reynolds Tobacco Co.* (1994) 7 Cal.4th 1057, 1063; *People v. Rowland* (1992) 4 Cal.4th 238, 268, fn. 6 [" '[b]ecause … no evidence is admissible except relevant evidence it is reasonable to hold that judicial notice, which is a substitute for formal proof of a matter by evidence, cannot be taken of any matter that is irrelevant' "].) The documents are not relevant to a material issue in this case, and thus, both requests are denied. Even were we to take judicial notice of the requested documents, the outcome of this case would be no different.

[4] We note defense counsel also filed a written objection to Standing Order No. 2024-03, arguing that a court reporter is mandatory in juvenile justice proceedings under section 677, and thus the standing order is improper.

4.

At the dispositional hearing on October 15, 2024, the juvenile court again advised the parties about Standing Order No. 2024-03, noted defense counsel's objection, and again overruled it.

The remainder of the proceedings before the trial court were electronically recorded, and the recordings were later transcribed by a court-approved transcriber, of which are part of the record on appeal before this court.

### B. The Juvenile Court Erred in Failing to Provide a Certified Court Reporter

Pursuant to section 677, juveniles have a statutory right to a live court reporter during delinquency proceedings. (§ 667; see Cal. Rules of Court,[5] rule 5.532(a).) The statute provides in pertinent part: "At any juvenile court hearing conducted by a juvenile court judge, an official court reporter shall … take down in shorthand all the testimony and all of the statements and remarks of the judge and all persons appearing at the hearing .…"[6] (§ 677.) Further, "On an appeal from an order of the juvenile court the record of the oral proceedings before that court is a transcript thereof prepared and certified by the official reporter." (*In re David T.* (1976) 55 Cal.App.3d 798, 800; see *id.* at p. 801 [finding the Legislature did not intend to permit the court to order a settled statement in lieu of a transcript].)

Merced County Superior Court's Standing Order No. 2024-03 conflicted with settled legal authority and was thus invalid. (See Gov. Code, § 68070, subd. (a); *In re*

---

[5]     All further rule references are to the California Rules of Court.

[6]     It is permissible by statute to record proceedings electronically in certain types of cases: "If an official reporter or an official reporter pro tempore is unavailable to report an action or proceeding in a court, subject to the availability of approved equipment and equipment monitors, the court may order that, in a limited civil case, or a misdemeanor or infraction case, the action or proceeding be electronically recorded .…" (Gov. Code, § 69957, subd. (a).) The parties agree, as do we, this case involves a juvenile delinquency proceeding which precludes the use of electronic recordings to generate an official certified verbatim record of court proceedings. (See *Jameson v. Desta* (2018) 5 Cal.5th 594, 608, fn. 10.) However, as set forth more fully below, the error is harmless because M.C. did not suffer prejudice. The transcribed electronic recordings provided M.C. meaningful appellate review.

5.

*Harley C.* (2019) 37 Cal.App.5th 494, 501 [a court may institute local rules that are " 'not inconsistent with law or with the rules adopted and prescribed by the Judicial Council' "].)  Accordingly, the juvenile court erred by applying Standing Order No. 2024−03 in violation of M.C.'s statutory right under section 677 to a court reporter during her juvenile proceedings.  (See, e.g., *Elkins v. Superior Court* (2007) 41 Cal.4th 1337, 1351.)

### C. *The Error is Harmless Because the Transcribed Electronic Recordings Provided M.C. with Meaningful Appellate Review*

The error is harmless because a complete verbatim transcript of the electronically recorded proceedings is included in M.C.'s record on appeal, protecting her appellate right despite the statutory violation.

It is required that M.C. be provided with " ' " 'a record of sufficient completeness' to permit proper consideration" ' of [any future] appeal."  (*In re Armstrong* (1981) 126 Cal.App.3d 565, 570; see *People v. Townsel* (2016) 63 Cal.4th 25, 68 ["[a] complete and accurate appellate record is needed to effectuate the rights to meaningful appellate review"].)  " 'What constitutes a "record of sufficient completeness" depends on the contentions being urged in the appeal.  Sometimes a statement of the facts agreed to by both sides will be sufficient, and even when the contentions go to the rulings on evidence or its sufficiency, requiring access to a verbatim transcript, the transcript provided can be limited to the portions relevant to those issues.' "  (*In re Armstrong*, at p. 571.)

The use of a certified shorthand reporter is not the exclusive means of providing an adequate record.  (See, e.g., *Draper v. Washington* (1963) 372 U.S. 487, 495.)  California courts have observed that "the battle over use of certified shorthand reporters versus electronic recording appears to be more political than factual."  (*People v. Turner* (1998) 67 Cal.App.4th 1258, 1266.)  The Second District Court of Appeal held that there was no violation of the defendant's constitutional rights because an electronic recording

device was used rather than a certified shorthand reporter. (*Id.* at p. 1263; accord, *In re Armstrong, supra*, 126 Cal.App.3d at p. 575 [finding that the use of a transcribed electronic recording rather than a live court reporter did not violate the defendant's constitutional rights where the electronic recording provided a verbatim account of the courtroom proceedings].) Moreover, in *People v. Chessman* (1950) 35 Cal.2d 455, our Supreme Court found that if a record can be made available on which the reviewing court can perform its function of evaluating the issues and determining whether there was error in the lower court, and can be " 'prepared in such a manner as to enable the court to pass upon the questions sought to be raised' … then there is no rational likelihood or legally cognizable possibility of injustice to the appealing defendant even though a verbatim record certified by the official court reporter cannot be supplied." (*Id.* at p. 460.)

In *In re Ian J.* (1994) 22 Cal.App.4th 833, the minor's dispositional hearing was neither recorded nor reported. On appeal, the minor argued his admission of the petition was not free and voluntary and he was not advised of the maximum period of confinement. (*Id.* at p. 836.) This court found that the juvenile court's failure to provide a verbatim transcript from an official court reporter of the minor's hearing was not reversible per se because the minor was afforded meaningful appellate review in the form of the clerk's minutes, which provided "significant detail" into the issues raised on appeal and were "an adequate substitute for a verbatim record." (*Id.* at p. 839.) This court also pointed out that the hearing was not contested and even if there was some error found on the record, the error would not be reversible because the advisement of the maximum penalty at a jurisdictional hearing is not constitutionally required. (*Id.* at pp. 839–840.)

Here, M.C. was provided with a complete verbatim record transcribed from the electronic recordings of the proceedings from which we have been able to review the court's findings. Like *In re Ian J.*, M.C.'s appeal concerns only matters arising from the

7.

dispositional hearing. This hearing was not contested. She had already admitted to battery causing serious injury (Pen. Code, § 243, subd. (d)).

M.C. does not argue that the transcript provided on appeal is inaccurate and fails to show any prejudice. Rather, M.C. simply argues we should find the failure to comply with section 677 is prejudicial per se. We disagree. The deprivation of a verbatim record is not necessarily reversible per se in juvenile cases.

M.C. relies on *In re David T.*, holding that the failure of the trial court to comply with section 677 was prejudicial because the statute requires the court to provide the minor with an official court reporter. (*In re David T., supra*, 55 Cal.App.3d at p. 802.) There, the trial court denied the minor a reporter's transcript and required him to rely on a " 'fair substitute.' " (*Ibid.*) The Fourth District Court of Appeal found that since compliance with the statute was made impossible because of the court's own fault, the minor was entitled to a new trial. (*Id.* at pp. 801–802.) The court found this fact distinguishable from *People v. Chessman*, where the defendant was unable to be provided with a verbatim transcript because of the death of the court reporter, which was " '*without fault of anyone*.' " (*Id.* at pp. 801–802; *People v. Chessman, supra*, 35 Cal.2d at pp. 458, 460.)

M.C.'s argument that the juvenile court was at fault is unavailing. The court failed to provide M.C. with a court reporter because there was a shortage in reporters. This is not a situation where the court wholly failed to comply with the statute, or there was no reason given as to why the court did not provide a reporter. Moreover, M.C. was provided with the transcription of the electronic recordings, which gave her an adequate substitute. Any inconsistencies or inaccuracies could be readily corrected. (Rules 8.410(a), 8.155(c).)

M.C. further argues the juvenile court failed to comply with rule 2.952 governing electronic recordings and as a result, the transcripts are invalid. Rule 2.952 only applies

to cases in the superior court and not juvenile delinquency proceedings. (Rule 2.2.) Nonetheless, even if rule 2.952 applied to the instant case, our holding would be the same. M.C.'s arguments regarding the failure to specifically comply with the California Rules of Court are not compelling because she was provided meaningful appellate review by way of the transcribed electronic recordings. (See *In re Ian J., supra*, 22 Cal.App.4th at pp. 838–839.)

Thus, because M.C.'s record is adequate to protect her right to meaningful appellate review, the lack of a court reporter here resulted in harmless error.

## II.     Probation Search Conditions

M.C. contends her counsel was ineffective for failing to object to the juvenile court's imposition of two warrantless search conditions. She also contends the conditions are invalid under *People v. Lent* (1975) 15 Cal.3d 481 (*Lent*) and violate her constitutional rights under the Fourth Amendment to the United States Constitution. The People respond that M.C.'s claim is forfeited and, reaching the merits, maintain the search conditions are likely to deter future criminality. We agree with the People.

### A. Additional Background

On September 24, 2024, probation recommended termination of DEJ and that M.C. be adjudged a ward of the court. The report noted that M.C. violated the rules of DEJ by running away from home on two occasions and failing to attend school.

At the DEJ review hearing, M.C. informed the juvenile court that she was unable to reach her probation officer because she did not have a phone. M.C. acknowledged that one of the DEJ requirements was to live with her mother, but M.C. ran away from her mother's house because of an argument she had with her. M.C. also admitted that she was not attending school.

M.C.'s mother testified that she wanted M.C. to continue to attend school. She believed more structure and resources from probation would help. When M.C. ran away,

9.

she was not living with her father, and M.C.'s mother did not know M.C.'s location.  The prosecutor requested warship.

The juvenile court ruled as follows:

"I am going to find that DEJ was unsuccessful … and [DEJ] is terminated. And that is based upon the violations and non-compliance that were outlined by probation, which is failing to obey the reasonable orders of your mother, … , failing to attend school every day, [] failing to abide by curfew[,] and staying somewhere else overnight rather than at the home of your mother without permission from probation."

Defense counsel requested review of the wardship orders with M.C.  The juvenile court set a dispositional hearing for a later date.

At the dispositional hearing, the juvenile court adjudged M.C. a ward of the court and placed her under the general supervision of the probation officer subject to certain rules, regulations, and conditions.  Pertinent here, the court ordered M.C. to submit her person, vehicle, place of residence, electronic devices, cell phones, computers, and any other belongings to search and seizure any time by any peace or probation officer with or without a warrant, probable cause, or reasonable suspicion.[7]

M.C.'s counsel objected to the gang-related clothing probation condition but not to the conditions M.C. challenges on appeal.[8]

---

[7]    Specifically, the orders state:  "10 Submit your person, vehicle, place of residence, or any other belongings to search and seizure, without a warrant, any time day or night, by any Probation Officer of Peace Officer with or without probable cause.  [¶] 11 Submit to search of all electronic devices, including cell phones and computers over which you have control or access to for electronic communication at any time of the day or night by any Probation Officer and/or Peace Officer with or without a warrant, probable cause, or reasonable suspicion.  Shall provide access/passwords to any electronic devices, computers, cell phones, accounts, and applications to any Probation Officer and/or Peace Officer.  Waive the specific consent and warrant requirements set forth in Penal Code Section[s] 1546 and 1546.1."

[8]    The juvenile court sustained defense counsel's objection on this issue because there was no evidence that M.C. associated with a gang.

### B.  M.C.'s Claim Is Forfeited

Failure to object to a probation condition on constitutional or *Lent* grounds in the trial court forfeits the claim on appeal.  (*In re Antonio C.* (2000) 83 Cal.App.4th 1029, 1033; see *People v. Welch* (1993) 5 Cal.4th 228, 237.)  Strong policy reasons support this rule because it is unfair and inefficient to permit a claim of error on appeal that could have been corrected by the lower court.  (*In re Josue S.* (1999) 72 Cal.App.4th 168, 171, 173.)

To circumvent forfeiture, M.C. argues that her counsel was ineffective for failing to object to the reasonableness of the warrantless search conditions.  We will therefore address the merits of M.C.'s contentions.  (See *People v. Williams* (1998) 17 Cal.4th 148, 161–162, fn. 6 [an appellate court has authority to reach a forfeited claim].)

### C.  Juvenile Probation Conditions

When a juvenile offender is placed on probation, section 730 allows the court to "make any and all reasonable orders for the conduct of the ward, including conditions of probation that shall meet all of the following requirements:  [¶]  (1) The conditions are individually tailored, developmentally appropriate, and reasonable[;]  [¶]  (2) The burden imposed by the conditions shall be proportional to the legitimate interests served by the conditions[;]  [¶]  (3) The conditions are determined by the court to be fitting and proper to the end that justice may be done and the reformation and rehabilitation of the ward enhanced."  (§ 730, subd. (b).)[9]

A condition of probation will be considered invalid if it " '(1) has no relationship to the crime of which the offender was convicted, (2) relates to conduct which is not in itself criminal, and (3) requires or forbids conduct which is not reasonably related to

---

[9]     Former section 730 permitted the court to "impose and require any and all reasonable conditions that it may determine fitting and proper to the end that justice may be done and the reformation and rehabilitation of the ward enhanced."  (Stats. 2022, ch. 58, § 40.)  Section 730 was amended on January 1, 2026.  (Stats. 2025, ch. 575, § 9.)

future criminality.' " (*Lent, supra*, 15 Cal.3d at p. 486.) "[A]ll three prongs must be satisfied before a reviewing court will invalidate a probation term." (*People v. Olguin* (2008) 45 Cal.4th 375, 379 (*Olguin*).) Accordingly, " 'even if a condition of probation has no relationship to the crime of which a defendant was convicted and involves conduct that is not itself criminal, the condition is valid as long as the condition is reasonably related to preventing future criminality.' " (*People v. Moran* (2016) 1 Cal.5th 398, 403.)

A juvenile court is vested with broad discretion to select appropriate probation conditions. (*In re Josue S., supra*, 72 Cal.App.4th at p. 173.) "A condition of probation which is impermissible for an adult criminal defendant is not necessarily unreasonable for a juvenile receiving guidance and supervision from the juvenile court." (*In re Todd L.* (1980) 113 Cal.App.3d 14, 19.) Because of this difference, " 'a condition of probation that would be unconstitutional or otherwise improper for an adult probationer may be permissible for a minor under the supervision of the juvenile court.' " (*In re Sheena K.* (2007) 40 Cal.4th 875, 889.) Thus, the juvenile court may impose probation conditions that infringe on constitutional rights if the conditions are tailored to meet the needs of the minor. (*In re Abdirahman S.* (1997) 58 Cal.App.4th 963, 969.) In imposing such conditions, "the juvenile court must consider not only the circumstances of the crime but also the minor's entire social history." (*In re Frankie J.* (1988) 198 Cal.App.3d 1149, 1153.)

### D. Standard of Review

We review the imposition of probation conditions for abuse of discretion. (*Olguin, supra*, 45 Cal.4th at p. 379.) A court abuses its discretion when the decision is arbitrary, capricious, and exceeds all bounds of reason. (*People v. Carmony* (2004) 33 Cal.4th 367, 377.)

12.

## E. Defense Counsel Did Not Provide Ineffective Assistance for Failing to Object to Conditions of Probation

To prevail on an ineffective assistance of counsel claim, prejudice must be affirmatively proved; the record must demonstrate "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." (*Strickland v. Washington* (1984) 466 U.S. 668, 694; accord, *People v. Ledesma* (2006) 39 Cal.4th 641, 745–746.) Tactical errors are generally not deemed reversible, and counsel's decisions are evaluated in the context of the record. (*Strickland*, at pp. 689–690.)

The reviewing court must determine whether the record contains an explanation for the challenged conduct. (*People v. Pope* (1979) 23 Cal.3d 412, 425 (*Pope*), overruling recognized on another ground in *People v. Delgado* (2017) 2 Cal.5th 544, 559 (*Delgado*).) If the record sheds light on why counsel acted or failed to act in the manner challenged, the conviction will be affirmed if counsel's acts or omissions resulted from an informed tactical choice within the range of reasonable competence. (See *People v. Fain* (1969) 70 Cal.2d 588, 600–601.) In contrast, "where the record shows that counsel has failed to research the law or investigate the facts in the manner of a diligent and conscientious advocate, the conviction should be reversed since the defendant has been deprived of adequate assistance of counsel." (*Pope*, at pp. 425–426.)

However, in some cases, the record on appeal is silent regarding why counsel acted or failed to act in the manner challenged. These cases are affirmed on appeal "unless counsel was asked for an explanation and failed to provide one, or unless there simply could be no satisfactory explanation." (*Pope, supra*, 23 Cal.3d at p. 426, overruling recognized on another ground in *Delgado, supra*, 2 Cal.5th at p. 559.) An assertion counsel was ineffective on a silent record is more appropriately made in a

13.

petition for habeas corpus, which promotes judicial economy.[10] (*People v. Mendoza Tello* (1997) 15 Cal.4th 264, 266–267.)

With these principles in mind, we consider whether M.C. received ineffective assistance for her counsel's failure to object to the two warrantless search conditions. The record is silent as to why defense counsel failed to object. However, M.C.'s counsel could have reasonably believed the search conditions were properly imposed. It was reasonable for M.C.'s counsel to conclude that an objection on this basis would not have been meritorious, particularly because the conditions were reasonably related to future criminality. (See *People v. Ochoa* (1998) 19 Cal.4th 353, 463 ["Representation does not become deficient for failing to make meritless objections."].)

The juvenile court terminated DEJ for M.C.'s failure to obey the orders of her mother, running away from home, failing to attend school, and failing to abide by curfew without permission from probation. The two search conditions enabled the probation officer to determine whether M.C. was complying with the conditions of probation and obeying the law in general. (See, e.g., *People v. Bauer* (1989) 211 Cal.App.3d 937, 943 [upholding a warrantless search condition on the grounds that it was related to future criminality and provided the probation officer with a valuable measure of the effectiveness of the supervision given the defendant and his amenability to rehabilitation].) Counsel was not remiss when he failed to object.

Applying the *Lent* criteria, we also conclude there is no prejudice on this record. (See *Strickland v. Washington, supra*, 466 U.S. at p. 694.) While the warrantless search conditions satisfy the first two prongs under *Lent* required to invalidate a condition, they do not satisfy the third. (See *Lent, supra*, 15 Cal.3d at p. 486.)

---

**10** A habeas corpus proceeding provides an evidentiary hearing and allows trial counsel the opportunity to set forth his or her reasons for acting or failing to act in the manner challenged. (Pen. Code, §§ 1483, 1484; *Pope, supra*, 23 Cal.3d at p. 426, overruling recognized on another ground in *Delgado, supra*, 2 Cal.5th at p. 559.)

The first prong under *Lent* considers whether the condition played a role in the offender's crime. (*Lent, supra*, 15 Cal.3d at p. 486.) M.C. argues that the warrantless and electronics search conditions have no relationship to her crime because the record contains no evidence about her use of electronic devices or any instrumentality during her physical fight with the victim at school. The People effectively concede that the first prong is met by failure to contest it, and we agree that the challenged condition has no relationship to M.C.'s offense of assaulting another individual.

The second prong addresses whether the condition relates to conduct that is criminal. The People likewise do not contest M.C.'s argument regarding whether the second prong of the *Lent* test is met. We conclude the second factor is also satisfied in this case because there is nothing illegal about refusing to submit to a warrantless search (*In re Martinez* (1978) 86 Cal.App.3d 577, 583) or using electronic devices (*In re Erica R.* (2015) 240 Cal.App.4th 907, 913).

### F. Conditions Reasonably Related to Future Criminality

Turning to the final *Lent* factor, however, the People argue the warrantless search conditions are reasonably related to preventing future criminality. We agree. The two conditions at issue here are (1) the warrantless search condition and (2) the electronics search condition. We will address each separately.

#### 1. The warrantless search condition.

Our Supreme Court held that a probation condition "that enables a probation officer to supervise [their] charges effectively is … 'reasonably related to future criminality.' " (*Olguin, supra*, 45 Cal.4th at pp. 380–381.) This requires a "rational factual basis for projecting the possibility that [the] defendant may commit a particular type of crime in the future, in order for such projection to serve as a basis for a particular condition of probation." (*In re Martinez, supra*, 86 Cal.App.3d at p. 583.) The " 'conditions of probation aimed at rehabilitating the offender need not be so strictly tied

15.

to the offender's precise crime' [citation] so long as they are 'reasonably directed at curbing [the defendant's] future criminality.' " (*In re Ricardo P.* (2019) 7 Cal.5th 1113, 1122, first bracketed insertion added.)  Accordingly, courts may establish probation conditions upon information in a probation report that raises concerns and future criminality unrelated to a prior offense.  (*Ibid.*; see *People v. Lopez* (1998) 66 Cal.App.4th 615, 623–625 [upholding probation condition that the defendant avoid gang involvement even though the offense did not involve gang activity].)

Warrantless searches are justified because they aid in deterring further offenses by the probationer and monitor compliance with the terms of probation.  (*People v. Robles* (2000) 23 Cal.4th 789, 795; *People v. Balestra* (1999) 76 Cal.App.4th 57, 65–67 [upholding warrantless search condition that served valid rehabilitative purpose of helping probation officer ensure that probationer obeys all laws]; see *In re Binh L.* (1992) 5 Cal.App.4th 194, 204–205 [in a case of automobile theft, a warrantless probation condition held constitutionally and statutorily valid].)

We conclude the warrantless search condition reasonably relates to ensuring M.C. follows the conditions of probation.  The condition also relates to public safety and M.C.'s rehabilitation.  M.C. battered a victim and had a history of running away and failing to attend school.  The warrantless search condition was imposed to provide M.C. with more supervision and structure, to ensure that she resided at home, stayed in school, and followed the conditions of probation.

M.C. argues that because her case does not involve theft, narcotics, or a concealed weapon, the warrantless search condition is not reasonably related to future criminality.  However, there is no brightline rule that the crime must involve theft, drugs, or weapons to impose a search condition on a juvenile probationer.  A juvenile court imposing a warrantless property or residence search condition is still subject to *Lent*'s three-part test.  (*In re Ricardo P., supra*, 7 Cal.5th at p. 1127.)  The juvenile court must consider " 'the

16.

facts and circumstances in each case' " to ensure "the burdens imposed by the condition are proportional to achieving some legitimate end of probation." (*Ibid.*)

Here, the warrantless search condition was imposed after M.C. was unsuccessful in completing the DEJ program. Specifically, her mother requested the court intervene to get M.C. "back on track, … back in good standings, … back in the game, … back going to school, and [to] get things more under control." Balancing the circumstances of the case against the burden on M.C. to succumb to a warrantless residential and property search, we find the condition was legitimately imposed to assist probation in adequately supervising M.C. The juvenile court's imposition of the search condition did not constitute an abuse of discretion.

### 2. The electronics search condition.

We also conclude that the electronics search condition reasonably relates to the effective supervision of M.C. The condition allows law enforcement to review M.C.'s electronic activity for any sign that she may have engaged in activity that is in violation of probation. (See, e.g., *In re P.O.* (2016) 246 Cal.App.4th 288, 295 [the electronics condition enabled peace officers to review the minor's electronic activity for indications that he had drugs or was otherwise engaged in activity in violation of his probation].) We again point out that M.C. was a runaway for several weeks and failed to keep in contact with probation and her mother. The condition will enable probation to monitor M.C.'s flight from home and any failure to attend school.

There is also some indication that M.C. and the victim fought over social media prior to M.C. committing the offense. Allowing a search of M.C.'s electronic devices reasonably relates to deterring future criminality, i.e., using social media to provoke future assaults. (Cf. *In re Erica R., supra*, 240 Cal.App.4th at p. 913 [the electronics search condition failed the third prong of the *Lent* test because there was nothing in the record regarding either the current offense or the minor's social history that connected

17.

her with the use of electronic devices or social media to the offense of possession of illicit drugs].)  Thus, the condition serves the rehabilitative function of deterring M.C. from committing further crimes.

The juvenile court also ordered M.C. to have no contact with the victim, a condition M.C. does not challenge.  The electronics search condition served the purpose of ensuring M.C. did not contact the victim.  (*In re Amber K.* (2020) 45 Cal.App.5th 559, 567 [even in the absence of evidence that the minor ever used electronic devices for any other purpose, the appellate court found no abuse of discretion in the juvenile court imposing an electronic search condition to make sure that the minor had no contact with the victim].)

We acknowledge that the *In re Amber K.* court concluded that while the electronics search condition was appropriate for the purpose of making sure the minor had no contact with the victim, the court held that the juvenile court went too far "by authorizing electronic searches for the broader purpose of insuring that [the minor] was complying with all the probation conditions."  (*In re Amber K., supra*, 45 Cal.App.5th at p. 567.)  The First District Court of Appeal ultimately struck the electronics search condition and remanded the matter to the juvenile court because it found this condition was overbroad under the circumstances of the case.  (*Ibid.*)

Like in *In re Amber K.*, the electronics search condition here was imposed in part for the purpose of ensuring that M.C. had no contact with the victim.  However, unlike *In re Amber K.*, the electronics search condition was not imposed *solely* for that reason.  The condition was imposed for the legitimate purpose of supervising M.C. and promoting rehabilitation.  As previously discussed, the record revealed numerous instances of noncompliance with probation conditions that the juvenile court sought to address when imposing the condition.

M.C. argues her case is analogous to *In re Ricardo P., supra*, 7 Cal.5th 1113 because she had committed no prior crimes and the record does not show that she used an electronic device to batter the victim. In *In re Ricardo P.*, the minor told his probation officer that " 'he wasn't thinking' " when he committed two felony burglaries and " 'he stopped smoking marijuana after his arrest because he felt that [it] did not allow him to think clearly.' " (*Id.* at p. 1116.) Based on the minor's statements, the juvenile court imposed an electronics search condition to monitor the minor's posts on the internet, reasoning the posts may be related to drug use. (*Id.* at p. 1117.) Our Supreme Court held that the electronics search condition was invalid under *Lent*'s third prong because the burden it imposed on the minor's privacy was substantially disproportionate to the condition's goal of monitoring and deterring the minor's drug use. (*Id.* at p. 1120.)

The electronics search condition in this case is not substantially disproportionate to the goal of supervising M.C. and ensuring rehabilitation. While on DEJ she was chronically truant and had behavioral and educational issues. M.C. did not use an electronic device to assault the victim, but the fight transpired because of "trash-talking" on social media. Considering the entire circumstances of M.C.'s background and the assault on the victim for which she was convicted, we conclude the broad electronics search condition was imposed as a means of adequately supervising M.C.'s compliance with her probation conditions and protecting the public, as well as M.C., from future criminality. (See *In re Martinez, supra*, 86 Cal.App.3d at p. 584 ["Before a defendant … can be asked to surrender his fundamental constitutional rights for the future, the entire circumstances of his background and the crime for which he was convicted, must be carefully scrutinized."].)

Given our deferential standard of review, we are unwilling to hold that the condition was so unrelated to the juvenile court's goal of supervising M.C. to constitute an abuse of discretion. For the same reasons, we also find the two warrantless search

19.

conditions meet the requirements under section 730, as amended by Statutes 2025, chapter 575, section 9.

### 3. Privacy and constitutional issues.

M.C. argues generally that the search conditions encroach on her constitutional and privacy rights. We disagree. As the court reasoned in *In re Frank V.* (1991) 233 Cal.App.3d 1232, while minors have constitutional rights, it is "well established … that the liberty interest of a minor is not coextensive with that of an adult." (*Id.* at p. 1242.) Because M.C. is a juvenile, she is "deemed to be more in need of guidance and supervision than adults, and … [her] constitutional rights are more circumscribed. The state, when it asserts jurisdiction over a minor, stands in the shoes of the parents. And a parent may 'curtail a child's exercise of the constitutional rights … [because a] parent's own constitutionally protected "liberty" includes the right to "bring up children" [citation] and to "direct the upbringing and education of children." ' " (*In re Antonio R.* (2000) 78 Cal.App.4th 937, 941, first bracketed insertion added.)

The two search conditions did not infringe on M.C.'s constitutional rights. We reach this conclusion given the circumstances of the offense, M.C.'s behavior while on DEJ, and her mother's request for more stringent conditions to curtail her poor behavior. The juvenile court stood in the shoes of her parent to assist in supervision.

Although a search condition may diminish a probationer's reasonable expectation of privacy, on a balance, M.C.'s privacy rights are not outweighed by the interests in M.C.'s own rehabilitation and protection, as well as that of society. (See *In re Binh L., supra*, 5 Cal.App.4th at p. 204 ["To determine how much of a reduction is constitutionally permissible, it is both necessary and proper to balance the individual's privacy rights, on one hand, against the interests of society in both the individual's rehabilitation and its own protection, on the other."].) The record does not support

M.C.'s assertions that the search conditions intrude on her right to privacy. M.C. does not have a cell phone and is required to live with her mother.

As a final note, we point out that M.C. does not direct us to anything in the record showing the harm she would face stemming from imposition of the search conditions. There is no prejudice on this record. M.C. did not receive ineffective assistance for her counsel's failure to object to the conditions of probation.

## **DISPOSITION**

The judgment is affirmed.

HILL, P. J.

WE CONCUR:

LEVY, J.

GUERRA, J.*

---

\*       Judge of the Fresno Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.